778 P.2d 1316

**PHOENIX CONTROL SYSTEMS, INC.,**
**a California corporation,**
**Plaintiff–Appellant,**

**v.**

**INSURANCE COMPANY OF NORTH**
**AMERICA, a Pennsylvania**
**corporation, Defendant–Appellee.**

**No. 1 CA–CV 88–030.**

Court of Appeals of Arizona,
Division 1, Department B.

March 9, 1989.

Review Granted Sept. 19, 1989.

Slater & Santaguida, P.C. by David B. Goldstein, Mesa, and Alioto & Alioto by Merl O. Barns, San Francisco, Cal., for plaintiff-appellant.

Snell & Wilmer by Warren E. Platt, Robert W. Haskin, Jr. and Orest B. Dachniwsky, Phoenix, for defendant-appellee.

JACOBSON, Judge.

This case raises the issue of an insurer's "duty to defend." Phoenix Control Systems, Inc. (Phoenix Control) appeals from summary judgment granted in favor of appellee, Insurance Company of North America (INA). The trial court found INA had no duty to defend a civil action instituted by Johnson Controls, Inc. (Johnson Controls) against Phoenix Control in the United States District Court in Arizona. Phoenix Control raises two issues on appeal: (1) whether the trial court erred in finding as a matter of law that under the policy's "intentional acts" exclusion, INA had no duty to defend; and (2) whether the trial court erred in holding that copyright infringement coverage provided by the policy was not operative. ·

I. FACTS AND PROCEDURAL HISTORY

■ Because the trial court granted summary judgment in INA's favor, we view the facts in the light most favorable to Phoenix Control. *See United Services Auto. Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246 (1987).

Both Phoenix Control and Johnson Controls are companies that design and sell industrial automated control systems, including computer software and devices for controlling the operation of water treatment and waste water plants. John Schratz and Rodney Larsen were Johnson Controls employees from 1974 to 1982 and from 1976 to 1984 respectively. After Johnson Controls terminated Schratz's employment, he founded Phoenix Control. Larsen later joined the company. In October 1984, INA issued an "Office Building Package Policy" to Phoenix Control, that provided property damage and liability insurance for the period from July 19, 1984, to July 19, 1985.

In the federal court action against Phoenix Control, Johnson Controls generally alleged that Schratz, with Larsen's assistance, prepared a bid on Phoenix Control's behalf for a waste water treatment plant for the Union Hills project in Phoenix. The suit alleged that Phoenix Control was aware that Johnson Controls was preparing or considering a bid on the same project and that Phoenix Control used Johnson Controls' property in preparing the bid. Johnson Controls further alleged that Phoenix Control represented to the City of Fort Lauderdale, Florida, that it was able to expand the existing computer software at its water treatment plant. Because Johnson Controls installed that water treatment program, it alleged that Phoenix Control had obtained access to the water treatment program Johnson Controls developed and owned.

The specific torts alleged by Johnson Controls were that Schratz, Larsen, and Phoenix Control had willfully committed acts of copyright infringement in violation of federal law; had wrongfully misappropriated confidential information and trade secrets; had intentionally misappropriated Johnson Controls' water treatment computer program; had interfered with prospective contractual relations; and had intentionally or recklessly made injurious falsehoods intending to cause Johnson Controls pecuniary loss. Johnson Controls sought damages as well as interlocutory and permanent injunctive relief enjoining Phoenix Control from further engaging in the alleged activities.

Phoenix Control claimed that the INA policy covered some or all of the claims asserted in the federal case and requested that INA defend it. The policy provided that: "we'll [INA] defend you [Phoenix Control] in any lawsuits brought against you as the result of any activity covered by YOUR LIABILITY COVERAGE." Liability claims covered were for *"bodily injury, personal injury,* or *property damage,* resulting from an *occurrence....."* Personal injuries included "[d]amage to someone's

reputation or violation of someone's privacy caused by a publication or statement you or another insured make ...," or "[a]ny infringement of copyright or improper or unlawful use of slogans in your advertising."

The policy defined occurrence as:

an accident, including continuous or repeated exposure to the same event, that results, during the policy period, in loss or damage to your property, or in bodily injury, personal injury, or property damage. Such injury or damage must *be neither expected nor intended by the insured.*

(Emphasis added). The policy defined accident as "a sudden, unforeseen, unintended event." The policy also excluded coverage for personal injury resulting from "[a] deliberately false statement you make about any person or business or its products or services...."

INA refused to defend the Johnson Controls action, contending that Phoenix Control's activity fell within the policy's "intentional acts" exclusion and that the alleged copyright infringement was not covered because it did not occur during advertising activity.[1] Phoenix Control brought the instant action for declaratory relief, requesting that the court find INA had a duty to defend. Phoenix Control moved for partial summary judgment, requesting that the court rule: (1) that INA provided coverage for Johnson Controls' claims of copyright infringement, misappropriation of trade secrets, interference with Johnson Controls' prospective contractual relations, and injurious falsehoods; and (2) that INA had a duty to defend the underlying action. Schratz's affidavit in support of Phoenix Control's motion stated in pertinent part:

5. During the time period beginning on July 19, 1984 and ending on July 19, 1985, PCSI [Phoenix Control] made proposals to supply computer software and systems. *In connection with preparing some of these proposals, PCSI operated on the premise that it could lawfully obtain certain software developed by Johnson Controls, Inc.* because that software was developed as part of projects which received all or part of their funding from the United States Environmental Protection Agency. PCSI and I had been advised by Wally Quinn, a California attorney, that regulations of the Environmental Protection Agency allowed the owner of such a project, such as the City of Phoenix, for example, to use or disclose such software as it saw fit. *I and the other officers of PCSI felt that we could obtain that software either from the Environmental Protection Agency or the project owner.* When we were not able to obtain any of that software through the Environmental Protection Agency we revised our proposals within a reasonable amount of time so that they would provide for different software that we could obtain lawfully or develop lawfully ourselves.

6. None of the software provided by PCSI to a customer contains any material that is the subject of a valid copyright registered in the name of Johnson Controls, Inc., that is a derivative of such material, or that could be considered a trade secret of or proprietary information to Johnson Controls, Inc. All of our software development has been independent.

(Emphasis added).

In a cross motion for summary judgment, INA requested that the court find that it had no obligation under the policy to defend the action. The trial court ruled for INA, stating:

A plain reading of the policy at issue indicates that the copyright infringement coverage applies only to advertising. Further, although the Complaint filed in U.S. District Court may have some allegations not framed as intentional, the

---

1. The record in this action does not reveal any final resolution of the federal case. The district court denied Johnson Controls' request for preliminary injunctive relief on May 13, 1986, but made the finding that Schratz intentionally marketed a Johnson Controls' product as a Phoenix Control product; that Phoenix Control standardized its hardware to use Johnson Controls' software, and that Phoenix Control used Johnson Controls' software as its own in preparing the proposal for the Phoenix waste water treatment plant.

underlying basis of that suit is intentional appropriation and the "intentional acts" provision of the policy would exclude coverage....

Phoenix Control appealed.

## II. DISCUSSION

### A. Standard of Review

■ We will reverse the trial court's grant of summary judgment if the court incorrectly applied the substantive law or if any issue of material fact remains in dispute. *See Long v. Buckley*, 129 Ariz. 141, 629 P.2d 557 (App.1981).

Phoenix Control argues that the existence of material questions of fact should have prevented the trial court from granting summary judgment. INA claims that because Phoenix Control moved for partial summary judgment, it is now estopped to claim that issues of material fact existed. INA also asserts that because Phoenix Control failed to raise the fact dispute in the trial court, it has waived the issue on appeal.

■ As a general rule if both parties file opposing motions for summary judgment, the court is not constrained to grant either motion if a genuine issue of material fact exists. *Schlytter v. Baker*, 580 F.2d 848 (5th Cir.1978). An appellant is therefore not estopped by filing a motion for summary judgment from asserting that genuine issues of fact exist.

■ INA's waiver argument is also incorrect. On appeal from summary judgment, this court will decide *de novo* whether the summary judgment standard was met. Rule 56(c), Arizona Rules of Civil Procedure; *Farmers Ins. Co. v. Vagnozzi*, 138 Ariz. 443, 675 P.2d 703 (1983); *see generally* 10 C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure* § 1716 (2d ed. 1983). Furthermore, Phoenix Control disputed the factual allegations INA made in its motion and claimed the federal complaint contained allegations of nonwillful conduct as well. Thus, Phoenix Control did not waive this issue. However, the sole question of fact Phoenix Control raises is whether it "intended" the loss that is the subject of Johnson Controls' lawsuit. Because we accept Phoenix Control's argument for the purpose of deciding the summary judgment motion concerning its good faith belief in the correctness of its actions, and no other contention concerning its "intention" is raised, we proceed to determine the legal consequences flowing from such an intent.

### B. The Effect of the Policy's Intentional Acts Exclusion on the Duty to Defend.

1. The construction of the insurance contract.

■ An insurer's duty to defend must be based upon the language used in its policy. *Navajo Freight Lines, Inc. v. Liberty Mut. Ins. Co.*, 12 Ariz.App. 424, 471 P.2d 309 (1970). An insurer may limit its coverage liability and its corresponding duty to defend by imposing conditions and restrictions upon its contractual obligation not inconsistent with public policy. *Kepner v. Western Fire Ins. Co.*, 109 Ariz. 329, 509 P.2d 222 (1973). Public policy forbids indemnifying a person against loss resulting from his own willful wrongdoing. *Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 694 P.2d 181 (1984). Thus, an intentional acts exclusion may properly deny coverage to an insured when the insured controls the risks covered by the policy so that the loss is the result of willful wrongdoing. *Id.* However, if the insured can show facts that might establish that he acted with privilege or justification recognized by law, the insured will be permitted to explain his subjective intent, and the fact finder must determine whether the insured acted intentionally so as to preclude coverage. *Id.* at 359, 694 P.2d at 190.

Schratz admits, by affidavit, that he intended to use Phoenix Control's proprietary information under the impression he had the "legal right" to do so. At oral argument, Phoenix Control conceded that we may consider the federal court's findings of fact in determining whether its acts were "intentional." However, Phoenix Control now argues that because it operated under a mistake of law, it had no intention to

injure and therefore its conduct was not intentional, but was privileged or justified and did not fall outside the insurance coverage. The basic issue is thus whether an insured's good faith belief in the legality of its intentional acts precludes an insurer from invoking its policy's intentional acts exclusion as a matter of law.

## 2. Mistake of law as privileged conduct.

In determining whether an intentional acts exclusion is applicable, "the basic question is whether the conduct which [gave rise to the incident] was intentionally wrongful from the viewpoint of the law of torts." *Transamerica Ins. Group v. Meere*, 143 Ariz. at 359, 694 P.2d at 189. Thus, if the conduct is privileged or justified, even though intentional, the exclusion may not be invoked. "Privilege" is a term applied to any circumstance justifying or excusing a tort so as to permit a defendant to avoid liability. *Restatement (Second) of Torts* § 10 (1976). Such avoidance is predicated on the concept that the defendant has acted to further an interest of such social importance that he is entitled to protection, even at the plaintiff's expense. W. Keeton, *Prosser and Keeton on the Law of Torts*, § 16 at 109 (5th ed. 1984). In this context, the social value of excusing torts committed under mistake of law is dubious. Professor Keeton's analysis of unavoidable mistake is instructive in this regard:

The plea of unavoidable mistake ... is that, although the result complained of as a wrong was intended, the defendant acted under an erroneous belief, formed upon reasonable grounds, that circumstances existed which would justify his conduct....

However, if one intentionally interferes with the interests of others, he is often subject to liability notwithstanding the invasion was made under an erroneous belief as to some fact or legal matter that would have justified the conduct. Under such circumstances, the risk of being wrong is commonly imposed on those who intentionally interfere rather than on those who are victimized by the conduct.... [I]n a civil action one who intentionally interferes with the person or property of another does so at his

peril, and must assume the risk that he is wrong. The line which is drawn between accident and mistake ... can be justified only upon the basis of a policy which makes the defendant responsible for the physical result which he intended, and, as between two parties equally free from moral blame, places the loss upon the one who made the mistake.

*Id.*, § 17 at 110. Mistake of law, unlike self-defense, is not privileged or justified conduct that enables a defendant to avoid liability. If intentional conduct based upon a mistake of law is neither privileged nor justified, does it thus become "intentionally wrongful" so as to permit the insurer to avoid liability under an intentional acts exclusion as a matter of law?

### 3. The case law.

Phoenix Control claims that recent Arizona Supreme Court decisions construing intentional acts exclusions mandate that we find INA has a duty to defend. *See Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 694 P.2d 181 (1984); *Fire Ins. Exchange v. Berray*, 143 Ariz. 361, 694 P.2d 191 (1984) and *Farmers Ins. Co. v. Vagnozzi*, 138 Ariz. 443, 675 P.2d 703 (1983). Phoenix Control reads these cases too broadly. *Meere* held that the trial court could not rule as a matter of law that an insured's blow struck in self-defense was intentional within the terms of the insurance policy. 143 Ariz. at 358, 694 P.2d at 188. In spite of the insured's intent to strike, the court considered such justified or privileged conduct insurable because it was outside the insured's control. The court found the underlying intent of the actor more important in characterizing conduct than the immediate intent accompanying the act that produced the injury. The court carefully articulated a three-part test to determine if an insured will be permitted to evade the applicability of an intentional acts exclusion by claiming privilege: (1) Was the activity purposeful? (2) Was the event in the insured's control? (3) Did no accident or calamity beyond the insured's control occur? *Id.* If these questions are answered in the affirmative, "[t]he law presumes he intended the result which was the natural consequence of his intentional act." *Id.* When the insured thus controls the

**426**

loss, "[he falls] within the category of risks which both the insurance contract and public policy consider uninsurable." *Id.*

■■■■ INA's policy states that it provides coverage for losses related to occurrences which are sudden, unforeseen, unintended events (accidents), but not for "injury or damage ... expected or intended by the insured." When the insured plans the activity and expects or intends the result of his actions he acts intentionally and controls the loss. *Meere*, 143 Ariz. at 358, 694 P.2d at 188. INA has demonstrated that its insured controlled the loss when it engaged in the alleged activity. First, Schratz's affidavit makes it clear that Phoenix Control purposefully used Johnson Controls' systems in preparing proposals. Second, the entire promotion scheme was part of a conscious business decision within the company's control. Third, Phoenix Control did not act to avoid a calamity; rather it acted for its own economic advantage. Furthermore, Phoenix Control knew that if its campaign succeeded it would cause Johnson Controls economic loss by its losing the bid. Phoenix Control's belief in its legal right to act does not detract from its basic desire to advance its own economic advantage and cause a corresponding economic disadvantage to Johnson Controls. *See Fire Ins. Exchange v. Berray*, 143 Ariz. at 364, 694 P.2d at 194 ("The exclusion applies when the insured's subjective or basic desire was to cause some harm to the plaintiff."). Its claim of privilege under mistake of law does not transform its intentional acts into insurable accidental occurrences. We therefore hold that Phoenix Control's good faith belief in the legality of its actions does not permit it to evade INA's intentional acts exclusion when the undisputed facts demonstrate it controlled the loss and intended any harm that might result from its acts.

*C. The Copyright Infringement Coverage Limitation to the Insured's Advertising.*

■■■■ The INA policy contains a section defining personal injury. Each cover-

ed activity is listed in a separate subsection. The last covered occurrence is "[a]ny infringement of copyright or improper or unlawful use of slogans in your advertising." Phoenix Control claims we must apply the doctrine of the last antecedent [2] and determine that "in your advertising" modifies only the preceding phrase "improper or unlawful use of slogans." We disagree. Viewing the policy as a whole, the context clearly requires that we should not apply the doctrine. We would create an anomaly if we interpreted one sentence explaining coverage to include two covered occurrences when all other sentences include only one. Because the federal case does not allege that Phoenix Control's copyright infringement occurred during advertising activity, we hold INA's policy did not provide liability coverage for the copyright claim.

## III. ATTORNEYS' FEES

INA requests attorneys' fees on appeal. We grant the request. INA may establish the amount of its award by complying with Rule 21, Arizona Rules of Civil Appellate Procedure.

## IV. CONCLUSION

Phoenix Control's good faith belief that its intentional acts were legal does not preclude INA from refusing to defend based on its policy's intentional acts exclusion.

The policy's copyright infringement coverage was limited to advertising, thus permitting INA to refuse to defend this claim as well. We affirm the trial court's grant of summary judgment in INA's favor.

FIDEL, P.J., and EUBANK, J., concur.

---

**2.** The doctrine of the last antecedent is that, generally, qualifying words and phrases in an insurance contract refer only to their immedi-

ately preceding antecedent. 13 J. Appleman, *Insurance Law and Practice*, § 7383 at 8 (1988 Supp.).