925 P.2d 741

**Daniel RIVERA, a single man, Plaintiff–Appellant,**

v.

**CITY OF PHOENIX, a political subdivision of the State of Arizona, Defendant–Appellee.**

**No. 1 CA–CV 95–0217.**

Court of Appeals of Arizona, Division 1, Department D.

May 14, 1996.

Review Denied Oct. 21, 1996.

Law Offices of Matthew R. Gould, P.C. by Matthew R. Gould, Scottsdale, for Plaintiff–Appellant.

Roderick G. McDougall, Phoenix City Attorney by Edward P. Reeder, Assistant City Attorney, Phoenix, for Defendant–Appellee.

## OPINION

KLEINSCHMIDT, Judge.

Daniel Rivera appeals from the denial of his request for a residential zoning variance. We affirm the denial because we find that Rivera did not have a vested right in the change to his home, that his request for a variance was properly denied, and that the City of Phoenix is not estopped from enforcing its zoning code.

Rivera's residence is located in an area where the zoning code limits the square footage of improvements to twenty-five percent of the area of the lot. In 1993, Rivera ap-

plied for a building permit to construct an addition to his residence. The application was submitted based upon "as-built" drawings of the residence provided by the previous owner. Based upon these drawings and the proposed changes, the City issued the permit. According to the permit application, the expanded residence would still cover less than twenty-five percent of the lot.

On January 6, 1994, the City inspected the premises. The inspection showed that the expanded residence violated the zoning limitations because it covered forty percent of the lot. The violation occurred because the drawings submitted with the permit application did not accurately reflect the lot coverage as increased by an addition to the original residence. Although the City asserts that it notified Rivera of the violation on January 6, the evidence in support of this assertion is ambiguous at best. On February 3, the City hand delivered a letter and stop work order to Rivera. Although the record does not reflect the cost of the work that proceeded between January 6 and February 3, by the time Rivera received the stop work order, he had invested a total of approximately $100,000 in the addition.

Rivera filed a request for a zoning variance to allow forty percent lot coverage. Both the Zoning Board and the Board of Adjustment denied the variance request. Rivera appealed to the City Council which affirmed the denial. Rivera filed a special action with the superior court which granted summary judgment for the City. Rivera was ordered to remove the addition to his home to the extent it exceeded the twenty-five percent lot coverage limitation. Rivera filed this appeal, claiming that (1) the City cannot require him to dismantle the addition because he has a vested property right in the permit and addition, (2) the City improperly denied Rivera's request for a zoning variance, and (3) the City was equitably estopped from enforcing the twenty-five percent lot coverage requirement. We disagree with Rivera, and we affirm the order of demolition.

### RIVERA DOES NOT HAVE A VESTED RIGHT IN THE PERMIT OR RESIDENTIAL ADDITION

■ Due Process under the United States and Arizona Constitutions requires that when a building or special use permit is legitimately issued and the permittee, in reliance on the permit, incurs considerable expenses, the right to continue construction becomes a vested property right which a city cannot revoke without good cause or public necessity. *Town of Paradise Valley v. Gulf Leisure Corp.*, 27 Ariz.App. 600, 607, 557 P.2d 532, 539 (1976); *Phoenix City Council v. Canyon Ford, Inc.*, 12 Ariz.App. 595, 599–600, 473 P.2d 797, 801–02 (1970). Rivera's building permit was based upon the plans he submitted which showed, erroneously, that the modified residence would not cover more than twenty-five percent of the lot. Thus, it was not "legitimately issued" and did not give rise to a vested right. *Matheson v. De Kalb County*, 257 Ga. 48, 354 S.E.2d 121 (1987) (when a building permit is issued in violation of an ordinance or under a mistake of fact, it is void and its holder does not acquire any vested rights); *Miller v. Board of Adjustment*, 521 A.2d 642 (Del.Super.1986) (permit issued illegally or in violation of the law or under mistake of fact does not confer vested right upon person to whom it is issued, even though substantial expenditures were made in reliance thereon). When a building permit application contains incorrect information which results in the issuance of a building permit allowing construction of a structure in violation of the zoning code, a subsequent revocation of the permit due to the zoning violation is with good cause within the meaning of *Town of Paradise Valley*, *supra*, so that the revocation does not violate Due Process.

### RIVERA'S REQUEST FOR A ZONING VARIANCE WAS PROPERLY DENIED

■ Rivera asserts that the City should have granted his request for a zoning variance. On review, a zoning board's decision is presumed to be correct, and any attack on it must establish that the decision was against the weight of the evidence, unreasonable, erroneous, or illegal as a matter of law. *Ivancovich v. City of Tucson Bd. of Adjustment*, 22 Ariz.App. 530, 535, 529 P.2d 242,

247 (1974); *Arkules v. Board of Adjustment of the Town of Paradise Valley*, 151 Ariz. 438, 441, 728 P.2d 657, 660 (App.1986). Section 307.A of the Phoenix Zoning Code allows for a zoning variance only if:

a.  ... there are special circumstances or conditions applying to the land, building, or use referred to in the application and which do not apply to other properties in the district; and

b.  That such special circumstances were not created by the owner or applicant; and

c.  That the authorizing of the variance is necessary for the preservation and enjoyment of substantial property rights; and

d.  That the authorizing of the application will not be materially detrimental to persons residing or working in the vicinity, to adjacent property, to the neighborhood, or to the public welfare in general.

Rivera asserts that the following facts (corresponding to the requirements of Section 307.A) show that denial of the variance was erroneous:

(1)  When Rivera applied for the variance, the addition was completed and cost over $100,000, thus making the property unique.

(2)  That the special circumstances of the unique property were not created by Rivera because he did not know that the relied upon "as-built" drawings were inaccurate.

(3)  Because requiring Rivera to tear down the residential addition would cause a loss of over $100,000, granting a variance would be the only way to preserve this substantial property right.

(4)  Granting a variance will not be detrimental to anyone because at least two of the immediate neighbors are above the 25% lot coverage limitation.

Assuming, arguendo, that all of the other conditions for a variance were met, Rivera did not meet the second condition because he created his own problem by providing the City with an erroneous site plan. *Pollard v. Zoning Bd. of Appeals*, 186 Conn. 32, 438 A.2d 1186 (1982) (undersized lot created by error of owner's surveyor was mistake attributable to owner, thus a self-imposed circumstance that did not justify a variance); *Misuk v. Zoning Bd. of Appeals*, 138 Conn. 477, 86 A.2d 180 (1952) (owner's miscalculation of side-yard dimensions due to failure to conduct survey of lot line locations did not justify variance); *see also Proskin v. Donovan*, 150 A.D.2d 937, 541 N.Y.S.2d 628 (1989) (high removal costs of improvements made in violation of variance was a self-imposed hardship that would not be relieved by another variance). Denial of Rivera's request for a variance was proper.

### *THE CITY IS NOT ESTOPPED FROM ENFORCING THE ZONING CODE*

█  Rivera also claims that the City should be estopped from enforcing the zoning code and requiring demolition of the residential addition. Estoppel is generally not applicable against the state except where "the government's wrongful conduct threatens to work a serious injustice and if the public interest would not be unduly damaged by the imposition of estoppel." *Freightways, Inc. v. Arizona Corp. Comm'n*, 129 Ariz. 245, 248, 630 P.2d 541, 544 (1981); *Carlson v. Arizona Dep't of Economic Sec.*, 184 Ariz. 4, 6, 906 P.2d 61, 63 (App.1995). Rivera asserts that the delay between the January 6 inspection and the February 3 stop work order was "wrongful conduct" because the City knew that Rivera was continuing construction during the interim.

█  Again, we disagree with Rivera. In *Carlson, supra*, we discussed the "wrongful conduct" element of an estoppel claim against the government, finding that estoppel will lie against the state only where the government's actions constitute "affirmative misconduct." *Carlson*, 184 Ariz. at 6, 8, 906 P.2d at 63, 65. *Carlson* distinguished between mere neglect or oversight and more egregious intentional or willful conduct that constitutes "affirmative misconduct." *Id.* at 6, 906 P.2d at 63. Under the facts of this case, the City cannot be estopped from enforcing the zoning code.

A one-month delay between the inspection and the issuance of the stop work order was

**604**

mere dilatory conduct, properly categorized as neglect or oversight that will not give rise to estoppel. *Carlson, supra.* Absent evidence that the City intentionally delayed notifying Rivera of the violation, or that the City affirmatively told Rivera, subsequent to the inspection, that he was in compliance with the zoning code, the City's actions in this case do not reach the level of affirmative misconduct, misrepresentation, or concealment necessary to support estoppel against the government. *See Outdoor Sys., Inc. v. Arizona Dep't of Transp.,* 171 Ariz. 263, 830 P.2d 475 (App.1992) (state agency's inadvertent issuance of three nonconforming sign permits and failure to notice the error for two years did not amount to wrongful conduct that would estop the agency from requiring signs to be torn down); *United States v. Ruby Co.,* 588 F.2d 697 (9th Cir. 1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979) (several year delay in government's survey of land claimed by landowners did not constitute affirmative misconduct and therefore did not estop government from claiming land); *see also Sekuterski v. Village of Lancaster,* 199 A.D.2d 983, 608 N.Y.S.2d 20 (1993) (where landowner built garage based upon erroneously issued building permit, village not estopped from enforcing zoning regulation).

Even if the City's actions could be characterized as "affirmative misconduct," estoppel would still be unavailable because Rivera offered no evidence of the cost of any construction that occurred between the inspection date and the date he received the stop work order from the City. Thus, there is no evidence that a "serious injustice" occurred because of any delay in notifying Rivera of the zoning violation.

The order of demolition is affirmed.

PATTERSON, P.J., and GARBARINO, J., concur.