IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| ROBERTA LOWE aka ROBERTA SCHUGMANN and LARRY LOWE, wife and husband, | ) ) ) | 2 CA-CV 2006-0212 DEPARTMENT A |
| | ) | O P I N I O N |
| Plaintiffs/Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PIMA COUNTY, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20052465

Honorable John F. Kelly, Judge

AFFIRMED IN PART
REVERSED IN PART AND REMANDED

Law Office of Mark Rubin, P.L.C.
  By Mark Rubin                                                                  Tucson
                                             Attorney for Plaintiffs/Appellants

Barbara LaWall, Pima County Attorney
  By Lesley M. Lukach                                                           Tucson
                                             Attorneys for Defendant/Appellee

P E L A N D E R, Chief Judge.

¶1 Pursuant to Arizona's Administrative Review Act, A.R.S. §§ 12-901 through 12-914, plaintiffs/appellants Larry and Roberta Lowe appeal from the superior court's grant of summary judgment in favor of defendant/appellee Pima County. In so ruling, the court effectively affirmed a decision of the Pima County Board of Supervisors, sitting as the Zoning Enforcement Board of Appeals, and also rejected the Lowes' request to quiet title in their favor to certain disputed property based on their claim of adverse possession.

¶2 On appeal, the Lowes maintain the superior court erred in granting summary judgment and upholding a zoning citation issued against them for having an unpermitted fence on certain property that, according to the county, the Lowes do not own. They argue the citation is improper because, contrary to the county's position that the fence is situated in a public right-of-way, they own the land the fence is on. Therefore, the Lowes further argue, the trial court erred in denying their cross-motion for summary judgment on their quiet-title claim. The Lowes also contend that, having issued a permit for the fence in 1983, the county should be equitably estopped from now claiming the fence was not properly permitted and citing them for that violation. For the reasons stated below, we affirm the superior court's ruling on the Lowes' estoppel defense but, finding triable issues of fact relating to ownership of the land on which the fence sits, reverse the court's summary judgment in favor of the county and remand the case for further proceedings.

## Background

**¶3**        We view the facts and reasonable inferences in the light most favorable to the Lowes, against whom summary judgment was entered. *See Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 2, 965 P.2d 47, 49 (App. 1998). Frank and Elsa Mark once owned all of the property at issue here. In 1958, they signed and recorded a "Deed of Dedication," in which they "CONVEY[ed] unto THE PUBLIC, for road and utility purposes," a sixty-foot strip of land (the "disputed property") running between what is now the Lowes' parcel and a parcel to the north. Both parcels, as well as two other adjoining parcels to the east, all adjoin the disputed property and were owned by the Marks.

**¶4**        It is undisputed that the Marks subsequently sold all four parcels. The Lowes purchased their property in 2000. The deed to that parcel described the property as, "The North half of the West half of the West half of the Southwest quarter of the Northeast quarter of Section 6, Township 15 South, Range 16 East, Gila and Salt River Base and Meridian, Pima County, Arizona; EXCEPT the North 30 feet thereof."

**¶5**        It is also undisputed that Pima County never expressly accepted the Marks' dedication of the disputed property. According to a non-party resident in the area, a road either in or near the disputed property has existed since 1956. That resident averred below that the county maintained the road from 1971 to 1982, when it posted a "Primitive Road" sign and discontinued maintenance, and that the road constitutes the only access to the Lowes' property. A utility pole is also located on the disputed property.

¶6		When the Lowes purchased their property, which is located immediately south of the disputed property, it included a swimming pool. At that time, the fence in question had already been in place for at least seventeen years. In 1983, previous owners of the Lowes' property obtained a permit from the county to construct the pool, and that permit referred to an existing fence. When the Lowes bought the property in 2000, they believed "they owned all of the property within the[] fence, as well as some additional property on the east side of the fence."

¶7		In 2004, the Lowes complained to the county about a herd of goats their neighbor to the north was allegedly keeping too close to the property lines. The neighbor then filed a complaint with the county, alleging that the Lowes' fence was actually located within the disputed property the Marks had dedicated as a public right-of-way. The county investigated the complaint, determined the fence was located on the disputed property, and cited the Lowes for constructing and maintaining a fence without a permit, in violation of Pima County Code §§ 18.01.030(E) and 18.95.030(B)(4).[1]

---

[1]The record reflects there was some confusion and previous disagreement between the parties about the alleged zoning code violations for which the Lowes had been cited. In a September 2004 letter to the Lowes, a county zoning inspector, without citing any zoning ordinance section, merely referred to a complaint and "alleged violation" concerning a "FENCE WITHIN A PIMA COUNTY RIGHT OF WAY." The citation actually issued to the Lowes, however, referred to "structure (fence) without a permit" and cited the applicable Pima County Code sections relating to that violation. The parties apparently now agree the citation was solely based on that alleged violation.

**¶8** After an administrative hearing, a county enforcement hearing officer entered a "Judgement" [sic] in favor of the county, finding the Lowes responsible for having violated Code § 18.01.030(E), ordering them to pay a fine of $750, but suspending the fine for forty-five days to allow them to move the fence and obtain a permit for it. The hearing officer also issued a "Special Memorandum" explaining his ruling. He concluded the 1983 permit covered both the swimming pool and fence, but found the permit application was "deceptive and flawed, and that th[o]se shortcomings were instrumental in the original issuance of the permit for the fence by Pima County." He also stated that he would leave "to other authorities" the Lowes' legal argument "that the alleged right-of-way dedication to Pima County was never, in fact, consummated."

**¶9** The Lowes appealed the hearing officer's decision to the Pima County Board of Supervisors, sitting as the Zoning Enforcement Board of Appeals. *See* A.R.S. § 11-808(G). The Board upheld the hearing officer's "decision that the fence was constructed without a permit and maintained without a valid Zoning Permit." The Lowes then appealed to superior court pursuant to A.R.S. §§ 12-904 and 12-905. *See also* § 11-808(G). In their complaint, the Lowes alleged in count one that the hearing officer's decision, as affirmed by the Board, was "not supported by substantial evidence, is contrary to law, is arbitrary and capricious and an abuse of . . . discretion." In count two of their complaint, the Lowes

sought a declaratory judgment to quiet title, claiming they had acquired ownership of the disputed property "as against all others," including the Marks, by adverse possession.[2]

¶10        On the parties' cross-motions for summary judgment, the superior court granted summary judgment in favor of the county on both counts of the complaint. In rejecting the Lowes' equitable estoppel argument, the court found "no inconsistency" in the county's position because "[t]here is no evidence that Pima County had knowledge of the problem with the fence when it issued the permit." It also rejected the Lowes' adverse possession claim, ruling that the public had properly accepted the Marks' dedication. This appeal followed.[3]

---

[2]In their original and amended complaints, the Lowes named as defendants the Estate of Frank Mark and his widow, Elsa Mark. Before filing their amended complaint, however, the Lowes learned that both Frank and Elsa Mark had died in the early 1990's. The Lowes published the summons and "a statement about how to obtain a copy of the complaint" in both Pima County and Carver County, Minnesota, where Elsa was last known to have resided. Neither of the Marks' estates has appeared in this action. Therefore, default was entered against them, and the Lowes moved for a default judgment below. The superior court denied that motion. And ultimately the court denied the Lowes' motion for summary judgment and granted the county's motion, essentially rejecting the Lowes' quiet-title claim against the Marks or their estates. The Marks' estates are not parties to this appeal.

[3]Although the Lowes cite generally A.R.S. § 12-120.21(A)(1) as the basis for this court's jurisdiction, our jurisdiction is specifically established in A.R.S. § 12-913. *See also City of Phoenix v. 3613 Ltd.*, 191 Ariz. 58, 60, 952 P.2d 296, 298 (App. 1997). We further note that, although the superior court did not expressly dispose of the Lowes' quiet-title claim against the Marks' estates in either its summary judgment ruling or judgment, the court implicitly did so by stating that its prior orders "resolve, fully and completely all claims brought by [the Lowes] in this matter and, therefore, this Judgment constitutes a final judgment in this case."

**Discussion**

## I. Ownership of disputed property

**¶11** The Lowes maintain the superior court erred by failing to enter a default judgment in their favor and against the Marks. *See* n.2, *supra*. They contend they "own the disputed property, subject to no claim in favor of Pima County or the public." According to the Lowes, the county never properly accepted the Marks' dedication and thereafter they adversely possessed the property from the Marks. *See* A.R.S. § 12-521(A)(1) ("'Adverse possession' means an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."); A.R.S. § 12-526(A) (adverse possession requires cultivation, use, and enjoyment of property for ten years); *see also Tenney v. Luplow*, 103 Ariz. 363, 366-68, 442 P.2d 107, 110-12 (1968); *cf. Geronimo Hotel, Inc. v. City of Tucson*, 121 Ariz. 446, 448, 591 P.2d 72, 74 (App. 1978) (where city unconstitutionally seized strip of land, "there was no public roadway immune from adverse possession").

**¶12** We address this question of ownership first because, if the Lowes' predecessors-in-interest had adversely possessed the disputed property by 1983, the record suggests the 1983 permit for the fence would be valid, making an estoppel defense unnecessary.[4] *See* A.R.S. § 12-521(B). And, assuming the Marks' attempted dedication was

---

[4]We note that the county argued two theories before the hearing officer: (1) that the 1983 permit did not include the fence, and (2) that if it did, the permit was void because it had been based on erroneous site plans. The hearing officer, however, rejected the county's

7

not properly accepted, if the property were adversely possessed after the 1983 permit had been issued, the fence would now be located on the Lowes' property, not in a public right-of-way. That, in turn, would cast doubt on, if not render unnecessary, the hearing officer's requirement that the Lowes bring the fence into compliance by obtaining a new permit "showing a revised location of the fence such that it is on [their] property in its entirety" and by "physically relocat[ing] the fence."

¶13        In granting summary judgment in favor of the county on the Lowes' declaratory judgment/quiet-title claim, the superior court stated:

> It is undisputed that the Marks subsequently transferred the property that plaintiffs now own, as well as three other parcels referenced in the deed, expressly excluding from those conveyances the property designated in the deed of dedication. Lot purchasers were entitled to re[]ly on the deed of dedication to create an easement for ingress and egress to their properties. The sale of lots after recordation of the deed constitutes acceptance by the public under the rationale of *Pleak v. Entrada Property Owners Association*, 207 Ariz. 418, 87 P.3d 831 (2004).

Thus, the court implicitly ruled that the Lowes could not adversely possess the disputed property because the public had accepted it. *See Bigler v. Graham County*, 128 Ariz. 474,

---

first argument, finding that the 1983 application and permit covered both the swimming pool and the already-existing fence. The county did not appeal that finding and for purposes of this appeal concedes that the 1983 permit did "cover the fence." Thus, the only underlying basis for the citation appears to be the county's allegation that the fence is located in a public right-of-way.

476, 626 P.2d 1106, 1108 (App. 1981) (adverse possession generally does not run against government).[5]

¶14 The Lowes argue that "[t]he trial court missed the point associated with the *Pleak* holding." They maintain that, "[t]o constitute acceptance of an offer to dedicate, a conveying document must refer to the dedicatory instrument, whether it be a plat, a survey or a deed of dedication." "On appeal from a summary judgment we must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Williams-Carter v. Maricopa County*, 183 Ariz. 338, 340, 903 P.2d 646, 648 (App. 1995). And, again, "we view all facts and reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered." *Bothell*, 192 Ariz. 313, ¶ 2, 965 P.2d at 49.

¶15 In *Pleak*, our supreme court addressed the question of "whether Arizona continues to recognize common law dedications of roadway easements for public use." 207 Ariz. 418, ¶ 1, 87 P.3d at 833. It concluded that common law dedication had not been

---

[5]On appeal, the parties address the question of whether the Marks' deed of dedication was an attempt to convey fee simple title to the county, as the county argues and as the superior court suggested, or rather, to dedicate the property as an easement for public use such that fee title remained with the Marks. *See Lacer v. Navajo County*, 141 Ariz. 396, 402, 687 P.2d 404, 410 (App. 1983) ("The effect of a dedication to public use is that the public acquires only the use of the property and the fee remains with the dedicator."); *but see* A.R.S. § 33-432(A) ("Every estate in lands granted, conveyed or devised . . . shall be deemed a fee simple if a lesser estate is not limited by express words or does not appear to have been granted, conveyed or devised by construction or operation of law."). We agree with the superior court, however, that "it is immaterial whether the deed was a dedication or a conveyance of fee title . . . [because] neither are effective without acceptance."

abrogated by statute and that Arizona still recognizes the doctrine. *Id.* ¶¶ 19-20. The court described the doctrine as follows:

> An effective dedication of private land to a public use has two general components—an offer by the owner of land to dedicate and acceptance by the general public. No particular words, ceremonies, or form of conveyance is necessary to dedicate land to public use; anything fully demonstrating the intent of the donor to dedicate can suffice.

*Id.* ¶ 21 (citations omitted).

¶16 As in this case, there was no dispute in *Pleak* that an offer to dedicate existed. *Id.* ¶ 22. But the defendants in *Pleak* argued "that the offer could not be accepted by the general public in the absence of public use." *Id.* ¶ 22. The court disagreed, setting forth the test for a common law dedication: "Our cases discussing common law dedications of parks teach that the sale of lots referencing a recorded plat containing the dedication constitutes an 'immediate and irrevocable' dedication." *Id.* ¶ 23, *quoting County of Yuma v. Leidendeker*, 81 Ariz. 208, 213, 303 P.2d 531, 535 (1956); *see also Hunt v. Richardson*, 216 Ariz. 114, ¶ 15, 163 P.3d 1064, 1069 (App. 2007) (sufficient acceptance when parties "purchased their properties with reference to the Survey").

¶17 In this case it is undisputed that the deeds for the four parcels, including the Lowes', do not expressly refer to a recorded plat or to the Marks' recorded deed of dedication. The Lowes assert that "[d]edication did not occur here because no property has ever been sold that refers to the Deed of Dedication," that "no purchaser of property has ever had any reason to know about the Deed of Dedication," and that it is "simply not

10

enough for someone to record a dedicatory instrument and, later, sell some property." In contrast, the county argues the superior court properly "found that under the rationale of *Pleak*, the recordation of the Deed and the subsequent conveyances excluding the Right of Way created by the Deed were sufficient to constitute acceptance."

¶18 We cannot agree with the county or the superior court on this legal issue. Although the Marks' deed of dedication was recorded, nothing in the deeds of the subsequently sold lots refers to it—the Lowes' deed only excludes "the North 30 feet" from the description of their property. This is insufficient to meet the *Pleak* test for acceptance of a common law dedication. In our view, that is so because the court in *Pleak* found effective acceptance by the general public of an offer in a survey to dedicate property for public use only because subdivision lots "were sold after recordation of the Survey and . . . the conveyance documents specifically referred to the Survey." 207 Ariz. 418, ¶ 23, 87 P.3d at 837.

¶19 *Pleak*, as well as the cases on which it relied, required a sale of property that referred to the plat dedicating property to the public. *See id.; see also Leidendeker*, 81 Ariz. at 213, 303 P.2d at 535; *Evans v. Blankenship*, 4 Ariz. 307, 316, 39 P. 812, 813 (Ariz. Terr. 1895). That requirement ensures that when a subsequent purchaser buys part or all of the property, he or she will have notice of the public dedication impacting the land. As the Lowes point out, when a conveying instrument expressly refers to a prior dedication, "knowledge of the dedication can be imputed to a title holder."

11

¶20     Here, however, Roberta Lowe averred that "[she] and her husband had no notice of the Deed of Dedication." Therefore, the Lowes claim, neither they nor "their predecessors-in-interest had [any] reason to know about the dedicatory offer, as their chain of title did not reflect the dedication." And we agree with the Lowes that, although their "legal description [of their parcel] excluded the north 30 feet of a piece of property," that "provides no notice concerning the ownership or use of the north 30 feet."

¶21     In other words, simply excluding the north thirty feet from a property description in a deed does not clearly or necessarily provide notice that that thirty feet had been dedicated to public use—rather, that strip might simply belong to an adjoining property owner or might have been retained by the original owners. And, contrary to the county's argument that merely recording the deed of dedication was sufficient, we note that a deed "'is constructive notice only to those who are bound to search for it.'" *Mountain States Tel. & Tel. Co. v. Kelton*, 79 Ariz. 126, 130-31, 285 P.2d 168, 171 (1955), *quoting Maul v. Rider*, 59 Pa. 167, 171 (1868); *cf*. A.R.S. § 33-416. The county has not shown how the Lowes were bound to search for a recorded deed dedicating property that they were not purchasing. If the Marks wanted to effectively complete a common law dedication of the disputed land to the public, they should have expressly referred to the deed of dedication in the deeds to the parcels they later sold so that buyers would have had notice of the dedication.

12

**¶22** In addition to its acceptance-by-sale argument, however, the county also argues that, although "use is not necessary to prove acceptance" under *Pleak*, *see* 207 Ariz. 418, ¶¶ 24-26, 87 P.3d at 837-38, use "can provide evidence of acceptance by the public." We agree, but only because *Pleak* did not clearly hold otherwise and because in other contexts Arizona case law suggests public acceptance of a dedication may be established by use.

**¶23** The court in *Pleak* did express concern about a test that would require "detailed case-by-case inquiries regarding whether and how the public had used a particular roadway," *id.* ¶ 26, but that concern arose in relation to a *requirement* to show use and did not exclude use as a means of acceptance. *Id.* ¶ 25. The court's emphasis was on providing landowners a predictable way to dedicate land to the public through the proper use of common law dedication. *Id.* ¶ 26. In other words, although use was not a necessary prerequisite to acceptance of an offer to dedicate, it apparently could still be sufficient. *See Evans*, 4 Ariz. at 316, 39 P. at 813 ("'Acceptance may be presumed if the gift is beneficial, and use[] is evidence that it is beneficial.'"), *quoting Abbott v. Cottage City*, 10 N.E. 325, 329 (Mass. 1887); *see also Allied Am. Inv. Co. v. Pettit*, 65 Ariz. 283, 290, 179 P.2d 437, 441 (1947) ("The use by the purchasers of lots and the general public constituted a sufficient acceptance."); Restatement (Third) of Property: Servitudes § 2.18 cmt. d (2000) ("Although acceptance is generally required to complete a dedication, since use by the general public is sufficient under some circumstances to constitute an acceptance, dedication

may take place without the participation of any governmental body or other identified party other than the dedicator."); *id*. § 2.18 cmt. e ("Acceptance may be effected by formal act of a governmental body, by public use of the designated areas, or by acts of maintenance or control by a governmental unit.").

¶24        Nonetheless, the Lowes argue the court in *Pleak* "sent a clear message, to wit: while lack of use cannot overcome a properly accepted dedication, neither can use suffice when an offer to dedicate has not been accepted by means of a recorded instrument that references the offer." If *Pleak* contains any such message, however, we cannot say it is "clear." For example, the court in *Pleak* cited with approval both *Evans* and *Allied American Investment Co.*, albeit for different propositions, but without rejecting their aforementioned statements, *see* ¶ 23, *supra*, on the subject of acceptance by use. *See Pleak*, 207 Ariz. 418, ¶¶ 8, 20, 23, 87 P.3d at 834, 837.

¶25        In addition, the court in *Pleak* distinguished two other cases because "neither . . . actually held that use by the general public—as opposed to mere sale of lots pursuant to a recorded survey or plat—is a prerequisite to acceptance of a common law roadway easement dedication." *Id.* ¶ 25, *citing Drane v. Avery*, 72 Ariz. 100, 102-03, 231 P.2d 444, 445-46 (1951), and *Edwards v. Sheets*, 66 Ariz. 213, 215-18, 185 P.2d 1001, 1002-04 (1947). Noting that "[t]he sufficiency of the acceptance simply was not an issue in either case," *id*. ¶ 25, the court in *Pleak* concluded neither *Drane* nor *Edwards* authoritatively "requir[ed] actual use by the general public before [a] road is effectively dedicated to public

14

use." *Id.* ¶ 24. But, again, the county merely argues here that public use may be sufficient, though not required, to establish acceptance of a dedication.

¶26 Significantly, the court in *Pleak* did not address, let alone reject, the following, broad statement in *Drane*:

> It is well settled in this jurisdiction that the making and recordation in the county recorder's office of a city addition plat, showing lots, blocks, dimensions thereof and width of all streets coupled with sales or [sic] lots therein, constitutes a "dedication" of such streets, *and use thereof by purchasers of lots and the general public constitutes sufficient acceptance of the dedication*, by which fee in the dedicated property passes to the county in trust for the public and the described uses.

72 Ariz. at 102, 231 P.2d at 445 (emphasis added). Moreover, the court in *Pleak* cited the Restatement (Third) of Property: Servitudes § 2.18. 207 Ariz. 418, ¶ 21, 87 P.3d at 837. And, as noted above, the comments to that Restatement section clearly recognize that "[a]cceptance may be effected . . . by public use of the designated areas." Restatement (Third) of Property: Servitudes § 2.18, cmt. e. "We are not allowed to anticipate how the [Arizona] Supreme Court may rule in the future." *State v. Keith*, 211 Ariz. 436, ¶ 3, 122 P.3d 229, 230 (App. 2005). If the court in *Pleak* intended to render public use insufficient and irrelevant for acceptance of a dedication, it obviously could have so stated but did not.

¶27 Although acceptance may be established by use, in this case disputes of fact remain as to whether the property covered by the Marks' deed of dedication has actually been used in such a way as to constitute an acceptance by the general public. Both parties moved for summary judgment below and do not argue on appeal that triable issues of fact

15

exist. But, "[a]s a general rule if both parties file opposing motions for summary judgment, the court is not constrained to grant either motion if a genuine issue of material fact exists." *Phoenix Control Sys., Inc. v. Ins. Co. of N. Am.*, 161 Ariz. 420, 424, 778 P.2d 1316, 1320 (App. 1989), *reversed on other grounds*, 165 Ariz. 31, 796 P.2d 463 (1990). "And, '[e]ven when the facts are undisputed, summary disposition is unwarranted if different inferences may be drawn from those facts.'" *Mitchell v. Gamble*, 207 Ariz. 364, ¶ 8, 86 P.3d 944, 948 (App. 2004), *quoting Santiago v. Phoenix Newspapers, Inc.*, 164 Ariz. 505, 508, 794 P.2d 138, 141 (1990) (alteration in *Mitchell*).

¶28        The county maintains that the property deeded by the Marks was being used as a road at the time of dedication and also has been used for utility purposes. It relies on an affidavit of a long-time resident of the area who averred that, "[s]ince 1956[,] the road has been in the same location as it exists today and in continuous use without interruption." We also note the record contains two drawings that purportedly show the disputed area. It is unclear from those documents, however, whether a road, denominated on the drawings as "Camino del Desierto," actually continues into the disputed area. An aerial photograph of the area also shows a roadway, labeled "E. Camino del Desierto," within what appears to be the disputed property based on the property lines depicted on the photograph. But a private surveyor stated in a letter that the "aerial photo/parcel overlay is not rectified to the true location of the property lines and has caused some confusion over the physical location of the road." He also stated that "the physical, graded right-of-way lies within the boundary

of [the] property" owned by the neighbors to the north of the Lowes' parcel. And Roberta Lowe averred "in no location is [the existing road] located within the property described in the Deed [of Dedication]."

¶29 The county also points to Roberta's averment that there is one utility pole located on the disputed property, as well as three poles on the Lowes' property. As the Lowes argue, however, there is no evidence in the record to explain "the circumstances surrounding the existence of the solitary pole" or to show that it was in fact installed as part of a public use. Inasmuch as both parties moved for summary judgment below, we must view the facts and reasonable inferences therefrom in the light most favorable to the party opposing the other's motion. *See Bothell*, 192 Ariz. 313, ¶ 2, 965 P.2d at 49. So viewed, the record reflects questions of fact on whether there has been any general public use of the property actually described in the Marks' deed of dedication, making summary judgment inappropriate for either party on count two of the Lowes' complaint.[6]

**II. Estoppel**

¶30 The Lowes also maintain the superior court erred in granting summary judgment in favor of the county because the county should be estopped from "enforc[ing] . . . its zoning ordinance" against them. They argue that "[e]stoppel provides a defense to enforcement of Pima County's zoning ordinance" in this case and that the hearing officer,

---

[6]In view of our conclusion and remand of the case for further proceedings, we do not address the Lowes' contention that they established all required elements for adverse possession of the disputed property.

Board of Supervisors, and superior court erred in finding otherwise. We address this issue because it will likely recur on remand if the trier of fact determines the general public has accepted the disputed property by use. *See Girouard v. Skyline Steel, Inc.*, 215 Ariz. 126, ¶ 9, 158 P.3d 255, 258 (App. 2007) (addressing issue likely to recur on remand).

¶31 As noted above, the Lowes filed this action (count one) pursuant to the Administrative Review Act. *See* A.R.S. §§ 12-901 through 12-914. "Under [that] Act, the superior court decides only whether an administrative action was illegal, arbitrary, capricious, or an abuse of discretion." *Brodsky v. Phoenix Police Dep't Ret. Sys. Bd.*, 183 Ariz. 92, 94-95, 900 P.2d 1228,1230-31 (App. 1995); *see also* A.R.S. § 12-910(E). This court, in turn, "reviews the superior court judgment to determine whether the record contains evidence to support the judgment and, in doing so, reaches the underlying issues of whether the administrative action was illegal, arbitrary, capricious, or involved an abuse of discretion." *Brodsky*, 183 Ariz. at 95, 900 P.2d at 1231; *see also McMurren v. JMC Builders, Inc.*, 204 Ariz. 345, ¶ 7, 63 P.3d 1082, 1085 (App. 2003).

¶32 The superior court ruled the hearing officer and Board of Supervisors had properly found that the permit issued for the fence was void and had correctly decided that the county was not estopped from enforcing the zoning code and citing the Lowes for the fence violation. Because an abuse of discretion occurs "[w]here there has been an error of law committed in the process of reaching the discretionary conclusion," we must consider whether the administrative bodies correctly applied the law in voiding the permit and in

18

either refusing to address or barring the Lowes' estoppel defense. *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 455-56, 652 P.2d 507, 528-29 (1982); *cf. Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, ¶ 27, 156 P.3d 1149, 1155 (App. 2007) (trial court's decision not to apply estoppel reviewed for abuse of discretion).

**¶33** Relying on *Valencia Energy Co. v. Arizona Department of Revenue*, 191 Ariz. 565, 959 P.2d 1256 (1998), the Lowes contend that estoppel may be applied against governmental agencies and should have been applied here. In *Valencia*, our supreme court outlined the circumstances in which estoppel may be applied against the government. The court stated: "The three elements of equitable estoppel are traditionally stated as: (1) the party to be estopped commits acts inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury to the latter resulting from the former's repudiation of its prior conduct." *Id.* ¶ 35; *see also Pingitore v. Town of Cave Creek*, 194 Ariz. 261, ¶ 24, 981 P.2d 129, 133 (App. 1998). The court in *Valencia* further stated "all these requirements are conditioned by the general rule that estoppel may apply against the state only when the public interest will not be unduly damaged and when its application will not substantially and adversely affect the exercise of governmental powers." 191 Ariz. 565, ¶ 40, 959 P.2d at 1269; *see also Freightways, Inc. v. Ariz. Corp. Comm'n*, 129 Ariz. 245, 248, 630 P.2d 541, 544 (1981).

**¶34** Because equitable estoppel is an affirmative defense, the Lowes bore the burden of proving its elements. *See Knight v. Rice*, 83 Ariz. 379, 381, 321 P.2d 1037, 1038

(1958). The Lowes argue all three elements discussed in *Valencia* are met in this case. They contend the county's "issuance of the citation in 2004 is an act inconsistent with the issuance of the permit for the fence in 1983"; their "reliance on the validity of Pima County's act was justified"; and they "have been injured by Pima County's repudiation of its prior action after more than 20 year[s]." The superior court, however, ruled that the first element of the estoppel test was not met because "[t]here is no inconsistency" between the county's grant of the permit in 1983 and the current citation. That is so, the court stated, because "[t]here is no evidence that Pima County had knowledge of the problem with the fence when it issued the permit."

¶35　　　　Although the superior court did not expressly cite *Freightways* in its ruling, it apparently accepted the county's argument, quoting that case, that "[t]he party to be estopped must know the facts." 129 Ariz. at 247, 630 P.2d at 543, *quoting United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970). The Lowes acknowledge "[t]he *Freightways* opinion notes the fact that the [Arizona Corporation Commission] knew about its error" and included a four-element estoppel test, including a requirement that the party to be estopped knew the material facts. *See id.* But they argue that *Valencia*, decided after *Freightways*, "includes no requirement that the governmental body know it has erred, when it errs, for purposes of estopping later governmental action." Because the inconsistent-act element of equitable estoppel does not require a showing that the government knew "of the

20

error associated with its original act," the Lowes argue, "[t]he [superior] court's position is inconsistent with Arizona law."

¶36        In *Valencia*, our supreme court noted the "four-prong standard" employed in *Freightways*, "was not expressly adopted in *Freightways*." *Valencia*, 191 Ariz. 565, n.16, 959 P.2d 1256, 1268 n.16. The court went on to state, however, that "[m]ore important, the test cited in *Freightways* is, in substance, no different than the three-prong test traditionally applied in Arizona." *Id.* Thus, Arizona law is not entirely clear on whether the government's knowledge of the facts relating to its prior act is required before the government may be estopped from later adopting an inconsistent position. Nonetheless, we have no difficulty concluding in this case that neither the administrative bodies nor the superior court abused their discretion in refusing to apply equitable estoppel against the county under the circumstances presented here.

¶37        As noted above, the hearing officer found "that the plot plan submitted in conjunction with the permit application . . . [wa]s deceptive and flawed, and that th[o]se shortcomings were instrumental in the original issuance of the permit for the fence by Pima County" in 1983. The Board of Supervisors affirmed that ruling. The record contains evidence to support that finding, including the permit itself and Roberta's own averment that the fence is located thirty feet north of the Lowes' actual property line. *See Brodsky*, 183 Ariz. at 94-95, 900 P.2d at 1230-31. Likewise, nothing in the record shows the county in fact knew of any factual errors in the 1983 permit and permit application. Because the

21

county was unaware in 1983 of the true location of the fence in relation to the property line of the Lowes' predecessor-in-interest and the alleged right-of-way, and in view of the "deceptive and flawed" application on which the 1983 permit was based, we find no error in the rejection of the Lowes' equitable estoppel defense below.[7] *See City of Chicago v. Roppolo*, 447 N.E.2d 870, 879-80 (Ill. App. Ct. 1983) (prior issuance of permit did not estop city from suing property owner when application contained misleading information and "permit was issued by virtue of an incorrect street address being placed on the application").

¶38 The Lowes also argue that "other acts, prior to the issuance of the citation, have been inconsistent with citing and prosecuting" the Lowes. Specifically, they point to Roberta's contacts with "the EIM/Mapping and Records Section Manager for Pima County's Department of Transportation and Flood Control District." Roberta averred that the county

---

[7]In challenging the Lowes' estoppel claim, the county also relies on *Rivera v. City of Phoenix*, 186 Ariz. 600, 925 P.2d 741 (App. 1996), apparently for the proposition that because "[t]he 1983 permit application did not accurately show the property line[,] . . . the permit is therefore void." *See also Eltoron, Inc. v. Zoning Hearing Bd.*, 729 A.2d 149, 154 (Pa. Commw. Ct. 1999) ("[A] building permit issued under a mistake of fact confers no vested right or privilege and may be revoked at any time."). Although *Rivera* would support an argument that the Lowes had no vested property rights in the permit if it were invalid, we disagree with the county's misapplication of portions of *Rivera* addressing vested property rights in the estoppel context. *See City of Tucson v. Whiteco Metrocom, Inc.*, 194 Ariz. 390, ¶ 21, 983 P.2d 759, 765 (App. 1999) ("Although Whiteco could not obtain vested property rights if the permits authorized construction of the billboards in violation of then-existing . . . regulations, this would not prohibit the trial court from estopping the City from asserting that the permits were issued in violation of then-existing . . . regulations.") (citation omitted). Because of our resolution of the estoppel issue, however, we need not address in detail the parties' arguments on this point.

employee told her "the road between the two properties was located in the same location depicted on aerial maps posted on the transportation department's website." The employee also sent Roberta an electronic mail ("e-mail") message in which she stated "the County ha[d] no real interest in the area [or the Lowes' dispute with their neighbor] since it is not a County maintained road."

¶39     To meet the requirement for an inconsistent act, an action by the government must "bear some considerable degree of formalism." *Valencia*, 191 Ariz. 565, ¶ 36, 959 P.2d at 1268; *see also John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 208 Ariz. 532, ¶ 11, 96 P.3d 530, 535 (App. 2004). The action must also "be taken by or have the approval of a person authorized to act in the area." *Luther Constr. Co. v. Ariz. Dep't of Revenue*, 205 Ariz. 602, ¶ 14, 74 P.3d 276, 279 (App. 2003). "It is rare that satisfactory evidence of an absolute, unequivocal, and formal state action will be found unless it is in writing." *Valencia*, 191 Ariz. 565, ¶ 36, 959 P.2d at 1268; *see also Pingitore*, 194 Ariz. 261, ¶ 25, 981 P.2d at 133. Here, the county employee's statements to Roberta were either made orally or in a rather casually worded e-mail. And, nothing in the record shows that the employee had any authority to speak for the county in a zoning matter. Thus, these other actions to which the Lowes point lacked the formality required to constitute an inconsistent act by the county. *See Valencia*, 191 Ariz. 565, ¶ 36, 959 P.2d at 1268.

¶40     In sum, based on this record, we agree with the administrative bodies and the superior court that the Lowes' estoppel defense against the county is not viable here.

23

Therefore, the court properly granted summary judgment in favor of the county on that issue.

**Disposition**

¶41    We affirm the superior court's grant of partial summary judgment in favor of the county and against the Lowes on their equitable estoppel defense. But the court's judgment rejecting as a matter of law the Lowes' claim in count two to ownership of the disputed property is reversed, and this case is remanded for further proceedings consistent with this decision. Because the propriety of the administrative orders against the Lowes might hinge on resolution of those ownership-related issues, we also must reverse the court's grant of summary judgment in favor of the county on count one of the Lowes' complaint.

¶42    The Lowes have requested an award of attorney fees on appeal pursuant to A.R.S. §§ 12-348(A)(2) and 12-1103. In Arizona, absent an agreement, attorney fees may be awarded only when expressly and specifically authorized by statute. *See Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 577, 521 P.2d 1119, 1123 (1974); *Camelback Plaza Dev., L.C. v. Hard Rock Café Int'l (Phoenix), Inc.*, 200 Ariz. 206, ¶ 10, 25 P.3d 8, 11 (App. 2001). Neither statute cited by the Lowes is applicable here.

¶43    Section 12-348(A)(2), A.R.S., only provides for an award of fees against the state, not the county. In fact, subsection (A)(1) of that statute provides for an award of

24

attorney fees in "[a] civil action brought by the state or a city, town or county against the party." But subsection (A)(2), which separately covers a different type of case in which fees are recoverable, provides for an award only in "court proceeding[s] to review a *state* agency decision." § 12-348(A)(2) (emphasis added). *See Bigelsen v. Bd. of Med. Exam'rs*, 175 Ariz. 86, 91, 853 P.2d 1133, 1138 (App. 1993) (when statute uses specific phrase in some sections but not in others, court cannot read that phrase into section from which it was excluded). Likewise, even assuming it otherwise applied here, the Lowes are not entitled to fees under § 12-1103 inasmuch as the ownership question has yet to be resolved. *Cf. Andrews v. Blake*, 205 Ariz. 236, ¶ 55, 69 P.3d 7, 22 (2003) (no award of fees under A.R.S. § 12-341.01 when successful party could not yet be determined).

_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge