IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PAWN 1ST, LLC, an Arizona limited liability company,
*Plaintiff/Appellant*,

*v.*

CITY OF PHOENIX, a political subdivision of the State of Arizona;
BOARD OF ADJUSTMENT OF THE CITY OF PHOENIX; and BOB FORD;
EMILIO GAYNOR; PATRICK PAUL; ALEX TAUBER; YVONNE
HUNTER; BETTINA NAVA; and EMILY RYAN, as members of and
constituting the Board of Adjustment of the City of Phoenix,
*Defendants/Appellees*,

WILLIAM JACHIMEK dba CENTRAL PAWN,
*Real Party in Interest/Appellee.*

No. 1 CA-CV 14-0500
FILED 4-12-2016

Appeal from the Superior Court in Maricopa County
No.  LC 2010-000701-001
The Honorable Lisa Daniel Flores, Judge

**REVERSED AND REMANDED**

COUNSEL

Baker & Baker, Phoenix
By Thomas M. Baker
*Counsel for Plaintiff/Appellant*

Phoenix City Attorney's Office, Phoenix
By Daniel L. Brown, Robert A. Hyde, Paul M. Li, Brad Holm
*Counsel for Defendants/Appellees*

Spiess & Bell, PC, Phoenix
By James O. Bell
*Counsel for Real Party in Interest/Appellee*

---

## OPINION

Judge Patricia A. Orozco delivered the opinion of the Court, in which Presiding Judge Margaret H. Downie and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

**¶1**         Pawn 1st, LLC (Pawn) appeals from the superior court's judgment dismissing its complaint for special action review of a decision by the Board of Adjustment of the City of Phoenix (City) and its members (collectively, the Board) granting a variance to real party in interest William Jachimek, doing business as Central Pawn (Jachimek). Because we conclude that Jachimek's application for a variance to operate a pawn shop within 500 feet of a residential district does not meet the necessary requirements established by statute and ordinance, we reverse the ruling and remand.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**         The underlying facts and procedural history of this case were stated in *Pawn 1st, L.L.C. v. City of Phoenix*, 231 Ariz. 309 (App. 2013) (*Pawn I*). Briefly, Jachimek entered into a lease with an option to purchase commercial property (the Property) zoned C-3 on the southwestern corner of McDowell Road and 32nd Street, intending to operate a pawn shop. *Id*. at 310, ¶ 2. The City of Phoenix Zoning Ordinance (Zoning Ordinance) requires that the exterior walls of a pawn shop business in a C-3 district be located at least 500 feet from a residential district. PHX., ARIZ., ZONING ORDINANCE § 623.D.132.b (2016). The City's Zoning Administrator denied Jachimek's request for a variance from the 500-foot distance requirement, but on appeal, the Board approved the variance. *Pawn I*, 231 Ariz. at 310, ¶¶ 4–5. Pawn, a competing pawn shop business, filed a complaint in superior court for special action review of the Board's decision. *Id*. at 310, ¶ 7.

¶3         In *Pawn I*, we reversed the superior court's determination that Pawn lacked standing to bring a statutory special action challenging the Board's grant of a variance to Jachimek and we remanded for consideration of the special action. *Id.* at 313, ¶ 25. On remand, the superior court denied Pawn's requested relief, finding that:

> the variance granted to Jachimek was an area variance and not a use variance. The variance at issue was a deviation from the zoning ordinance that imposed a dimensional requirement for pawn shops, i.e. that the exterior walls of the building in which the pawn shop is located shall be at least five hundred (500) feet from a residential street. Section 623(D)(132) of the Phoenix Zoning Ordinance. This zoning ordinance did not prohibit pawn shops; for that reason, granting a variance was not a "use variance." Because the Board of Adjustment is authorized to consider area variances, its decision to grant the area variance to Jachimek was not *ultra vires*.
>
> For reasons fully stated in the written and oral arguments of Defendant City of Phoenix and Real Party in Interest Jachimek, the Court finds that there is evidence to support the Board's decision to grant the area variance.

¶4         The superior court affirmed the Board's decision and entered judgment dismissing Pawn's complaint with prejudice. Pawn appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1 and -2101.A.1 (West 2016).[1]

## DISCUSSION

I.      Standard of Review

¶5         We review de novo issues involving the interpretation of a statute or a city ordinance. *See Whiteco Outdoor Advert. v. City of Tucson*, 193 Ariz. 314, 316–17, ¶ 7 (App. 1998). We generally defer to the Board's decision and presume it to be correct unless it is "not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12-910.E; *see also Whiteco*, at 317, ¶ 7. If the

---

[1]      We cite the current version of applicable statutes and ordinances when no revisions material to this decision have since occurred.

record contains credible evidence to support the Board's decision, it must be affirmed. *See Austin Shea (Ariz.) 7th St. and Van Buren, L.L.C. v. City of Phoenix*, 213 Ariz. 385, 392, ¶ 29 (App. 2006); *Murphy v. Town of Chino Valley*, 163 Ariz. 571, 574 (App. 1989).

¶6         However, as to issues of statutory interpretation, we are free to draw our own conclusions as to whether the Board properly applied the law. *See Murphy*, 163 Ariz. at 574. Further, we may "substitute [our] judgment for the Board's assessment of the legal effect of the underlying facts." *Whiteco*, 193 Ariz. at 317, ¶ 7. "[We] may substitute our opinion for that of the superior court since we are reviewing the same record." *Arkules v. Bd. of Adjustment of Town of Paradise Valley*, 151 Ariz. 438, 441 (App. 1986).

II.    In Granting the Variance, the Board Did Not Make a Change in Permitted Usage

¶7         The Board or its Zoning Administrator "may not [m]ake any changes in the uses permitted in any zoning classification or zoning district." A.R.S. § 9-462.06.H.1; PHX., ARIZ., ZONING ORDINANCES §§ 303.B.2.a, 307.A.10.a. Pawn argues that Jachimek's request for a variance is not an "area" variance as found by the superior court, but an unauthorized "use" variance because it allows the Property to be developed for an impermissible use; namely, the operation of a pawn shop within 500 feet of a parcel zoned residential. In contrast, the City, the Board and Jachimek argue the variance is a permissible "area" variance.

¶8         All parties cite out-of-state cases in support of their respective arguments about whether a distance separation limitation, such as the 500-foot requirement here, constitutes a "use" or "area" variance. Although the terms "use variance" and "area variance" are not embodied in the statutes or ordinances, we find those terms helpful in exploring and explaining the relevant distinctions.

¶9         The distinctions between "area" and "use" variances stem from *Ivancovich v. City of Tucson Bd. of Adjustment*, in which this court addressed the propriety of a 1968 variance request and discussed the distinction at length. 22 Ariz. App. 530, 531-32 (1974). In *Ivancovich*, we stated:

> A 'use' variance is one which permits a use of land other than that allowed by the zoning ordinance. Thus, a variance which permits a commercial use in a residential district is a

'use' variance. 'Area' variances involve such matters as setback line, frontage requirements, height limitations, lot size restrictions, density regulations and yard requirements.

*Id.* at 536 (internal citation omitted).

¶10 Even though A.R.S. § 9-462.06.H.1 went into effect on January 1, 1974, it was not addressed in *Ivancovich*. The issue in this case is whether, in approving the variance requested by Jachimek, the Board made a change in the use permitted in the zoning.

¶11 Here, the Property is zoned as a C-3 commercial district, and the Zoning Ordinance allows all uses permitted in a C-2 commercial district in a C-3 commercial district. PHX., ARIZ., ZONING ORDINANCE § 624.D; *see also Desruisseau v. Isley*, 27 Ariz. App. 257, 261 (1976) (stating that "it is true that a C-3 district allows all uses permitted in a C-2 district") (disapproved of on other grounds by *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 9 (1985)). Permitted uses in a C-2 commercial district include: "Pawn Shop. Subject to the following limitations . . . [t]he exterior walls of the building in which the use is located shall be at least five hundred (500) feet from a residential district." PHX., ARIZ., ZONING ORDINANCE § 623.D.132.b. Under the plain language of the Zoning Ordinance, operation of a pawn shop is a permitted use in a C-2 commercial district, subject only to a distance limitation. *Id.* The Board's decision to grant the variance to operate a pawn shop within 500 feet of a residential district in a C-3 commercial district did not allow a use not permitted in the zoning classification.

¶12 Pawn also argues that an area variance only deals with intra-property issues or intra-property dimensional requirements. Specifically, "the variance at issue does not seek to modify set-back lines, frontage requirements, height limitations, lot-size restrictions, density regulations, or yard requirement." Thus, the distance separation setback in this case cannot be an area variance. However, as the City contends, the setback under PHX., ARIZ., ZONING ORDINANCE § 623.D.132:

is measured from the walls of the pawn shop . . . to another parcel. [T]his 500 foot distance separation is not materially different than the setback requiring a house to be 35 feet from the property line of the neighboring parcel: each sets a particular distance between the exterior walls of a lawful use within the parcel to the property line of another lawful use.

We agree with the City that, "either the property owner's intended use is allowed within the zoning district where the property is found, or it is prohibited within the zoning district. There are no degrees of prohibition on the uses." Therefore, we reject Pawn's argument that the requested variance is a "use variance" because a pawn shop is an allowed use within a C-3 zoning district, irrespective of the 500-foot distance requirement.

III.     The Board Improperly Granted the Variance

¶13       Pawn also argues the Board exceeded its jurisdiction and authority in failing to find the necessary criteria required by statute and ordinance before approving the variance. We agree.

¶14       The Board "has no powers except those granted by the statutes creating it" and "its power is restricted to that granted by the zoning ordinance in accordance with the statute." *Arkules*, 151 Ariz. at 440. The Board has no jurisdiction to act contrary to law. *Id.* If the Board's decision exceeds the scope of its powers, it is "ultra vires and void." *Id.* (quoting *Applestein v. Osborne*, 156 Md. 40, 42 (App. 1928)).

¶15       Pursuant to A.R.S. § 9-462.06, which created the Board:

> G.     A board of adjustment shall:
>
> . . .
>
> 2.     Hear and decide appeals for variances from the terms of the zoning ordinance only if, because of special circumstances applicable to the property, including its size, shape, topography, location, or surroundings, the strict application of the zoning ordinance will deprive the property of privileges enjoyed by other property of the same classification in the same zoning district. Any variance granted is subject to conditions as will assure that the adjustment authorized shall not constitute a grant of special privileges inconsistent with the limitations upon other properties in the vicinity and zone in which the property is located.
>
> . . .

H.      A board of adjustment may not:

. . .

2.      Grant a variance if the special circumstances applicable to the property are self-imposed by the property owner.

*See also* PHX., ARIZ., ZONING ORDINANCES §§ 303.B.2, 307.A.10.b.

**¶16**      Further, the Zoning Ordinance provides that a Zoning Administrator shall:

9.      Authorize upon application and hearing such variance from the terms of this ordinance as will not be contrary to the public interest, when owing to special conditions, a literal enforcement of any provisions of the ordinance would result in unnecessary property hardship.

A variance shall not be authorized unless the Zoning Administrator shall find upon sufficient evidence:

a.      That there are special circumstances or conditions applying to the land, building, or use referred to in the application and which do not apply to other properties in the district; and

b.      That such special circumstances were not created by the owner or applicant; and

c.      That the authorizing of the variance is necessary for the preservation and enjoyment of substantial property rights; and

d.      That the authorizing of the application will not be materially detrimental to persons residing or working in the vicinity, to adjacent property, to the neighborhood, or to the public welfare in general.

*Id.* § 307.A.9.  The word "shall" as used in the ordinance "is mandatory and not permissive."  *Id.* § 201.

¶17 The Board's "power and authority to grant a variance is to be exercised sparingly and under exceptional circumstances, if the integrity of the zoning code is to be maintained. To permit any other course would render naught and useless the legislative purpose in enacting the zoning code." *Ivancovich*, 22 Ariz. App. at 535.

¶18 At the public hearing on Jachimek's variance application, Jachimek's representative told the Board that the Property had been used for many years as a strip club, a non-conforming use, and that the owners of the Property wanted to "get rid of this non-conforming use." Jachimek's representative also told the Board that because of "eminent domain proceedings on this particular property, the corner has been reduced to 12,000 square feet, they have lost significant parking and access, and the property will have no setbacks, all of which create a significant deleterious affect [sic] to this property and occur by virtue of this condemnation." Jachimek's representative told the Board that a survey "of twelve surrounding intersections" showed that "[n]one of the C-3 corner parcels was less than 12,000 square feet. The size of the parcel severely limited the types of uses they can locate on the property."

¶19 Further, Jachimek's representative stated that

> [e]minent domain took away a substantial portion of the property along McDowell Road and 32nd Street resulting in that building having zero setbacks directly abutting the public sidewalk. . . .
>
> The proximity of those sidewalks creates esthetic [sic] drawbacks as well as security risks and no other C-3 of the ones that I'm showing you [referring to the survey] had that kind of situation.

Jachimek's representative urged that the discontinuation of the non-conforming use and the effects of the eminent domain action constituted "special circumstances" warranting a variance from the distance limitation applicable to pawn shops.

¶20 A representative from the City advised the Board that there were no special circumstances in this case because Jachimek chose this location on which to operate a pawn shop, despite the ordinance distance limitation, and, therefore, recommended the Board deny the variance.

¶21          After hearing from the parties and members of the public, the Board's chairman moved to overturn the Zoning Administrator's ruling and approve the variance, finding that:

> [T]here are special circumstances that apply to the land, namely unique nature of the discontinuance of the non-conforming use on the property, the fact that it is substantially impacted by prior eminent domain activities in a manner that is dissimilar to other properties in a reasonably close radius including set back and the fact that there's less than 12,000 total feet available, there are restrictive parking requirements; that these special circumstances were not created by the owner/applicant and were rather in part created by growth in the city itself; that it is necessary for the preservation and enjoyment of substantial property rights given the restrictions of the property and the current dormancy of any other business on the site, this particular place on the site, that authorizing it will not be materially detrimental to persons residing or working in the vicinity to adjacent property, neighborhood, or public welfare in general.

The Board approved the motion.

¶22          Pawn argues the Board could not grant the variance unless special circumstances or hardships applying to the Property (1) "prevent reasonable use of the property in the absence of a variance," (2) the "zoning ordinance preclude[s] the use of the property in question for any purpose for which it is reasonably adapted," and (3) the "situation or condition of the property in question[] is extraordinary and exceptional and application of the zoning requirement would cause peculiar and exceptional practical difficulties or exceptional and undue hardship."

¶23          To grant a variance, the Board must find that "because of special circumstances applicable to the property, including its size, shape, topography, location, or surroundings, the strict application of the zoning ordinance will deprive the property of privileges enjoyed by other property of the same classification in the same zoning district." A.R.S. § 9-462.06.G.2; *see also Haynes v. City of Tucson*, 162 Ariz. 509, 510 (App. 1989) (stating, "we are required to find that strict application of the zoning ordinance would deprive the property of privileges enjoyed by other property of the same class in the same district"). Under the Zoning Ordinance, a variance is not authorized unless "there are special

circumstances or conditions applying to the land, building, or use referred to in the application and which do not apply to other properties in the district." PHX., ARIZ., ZONING ORDINANCE § 307.A.9.a. Neither A.R.S. § 9-462.06.G.2 nor § 307.A.9.a of the Zoning Ordinance defines "special circumstances," but Arizona case law notes that the "term 'special circumstances' as used in the zoning ordinance is the functional equivalent of the word 'hardship.'" *Burns v. SPA Auto., Ltd.*, 156 Ariz. 503, 505 (App. 1988).

¶24 The eminent domain proceedings that reduced the Property's size, parking, and setback did "deprive the property of privileges enjoyed by other property of the same classification *in the same zoning district*" as required by A.R.S. § 9-462.06.G.2 and "do not apply to other properties *in the district*" as required by § 307.A.9.a of the Zoning Ordinance. The Board considered statements by Jachimek's representative that the eminent domain proceedings affected the Property in a manner dissimilar to the "*twelve surrounding intersections*" and the Board's Chairman found that the property had been "substantially impacted by prior eminent domain activities in a manner that is dissimilar to other properties *in a reasonably close radius*." The Board's comparison of the Property to other C-3 properties at twelve surrounding intersections was an appropriate comparison.[2] Thus, the variance application satisfied the threshold comparison required by statute and ordinance to other property within the same district. *See* A.R.S. § 9-462.06.G.2; PHX., ARIZ., ZONING ORDINANCE § 307.A.9.a.

¶25 Jachimek argues that "the discontinuance of a non-conforming use through the approval of a use permit and variance for a pawn shop has previously been recognized by the City of Phoenix as a special circumstance that satisfies this element of the variance test." Discontinuation of a non-conforming use, however, is not a special circumstance that would "deprive the property of the same privileges as any other property of the same classification in the same zoning district" or that does "not apply to other properties in the district." A.R.S. § 9-462.06.G.2; PHX., ARIZ., ZONING ORDINANCE § 307.A.9.a. Rather, the discontinuation merely brings property rights and privileges in line

---

[2] We ordered supplemental briefing addressing the "district" the Board was required to consider in evaluating the variance application and whether the Board focused on the appropriate property comparisons. We find the City's brief persuasive that the "district" here encompassed other C-3 properties that do not suffer a hardship.

with other properties in the same district. PHX., ARIZ., ZONING ORDINANCE § 903.A (upon abandonment of non-conforming use, "any subsequent use of the parcel of land or structure shall conform to the regulations of the zoning district in which it is located"). Moreover, it is immaterial if other properties received variances due to the discontinuation of non-conforming use. *Haynes*, 162 Ariz. at 511 ("That some other such properties may have received variances is immaterial else each grant of a variance would effect a city-wide zoning change.").

¶26 Additionally, the statute and the Zoning Ordinance require that the special circumstances cannot be created by the owner or applicant, but rather must relate to the property, the land, building or use, as opposed to any personal hardship suffered by the owner or applicant. *See* A.R.S. § 9-462.06.H.2; PHX., ARIZ., ZONING ORDINANCES §§ 303.B.2.b, 307.A.9.b, 10.b; *see also Arkules*, 151 Ariz. at 441 (stating that the board has "no authority to grant a variance to allow [applicant's] personal preference for a color which would enhance the design he chose for his house"); *Burns*, 156 Ariz. at 505 (holding that variance applicant's decision to be a three-car dealership necessitating sign large enough to meaningfully display three manufacturers' logos in excess of sign size permitted by city ordinance was a special circumstance or hardship that was self-inflicted); *Rivera v. City of Phoenix*, 186 Ariz. 600, 603 (App. 1996) (finding that variance applicant "created his own problem" by providing city with erroneous size plan); *Minney v. City of Azusa*, 164 Cal. App. 2d 12, 31–32 (Cal. Dist. Ct. App. 1958) ("One who purchases property in anticipation of procuring a variance to enable him to use it for a purpose forbidden at the time of sale cannot complain of hardship ensuing from a denial of the desired variance.").

¶27 Any special circumstances here were created by Jachimek and/or the Property owner by selecting this particular property to use as a pawn shop, in violation of the prohibition against self-imposition. Thus, the Board exceeded its statutory jurisdiction and authority in granting the application for a variance that did not meet the criteria set forth in A.R.S. §§ 9-462.06.G.2, H.2, and PHX., ARIZ., ZONING ORDINANCES §§ 303.B.2.b, 307.A.9.a–b, and 10.b. Therefore, the Board's decision to grant Jachimek a variance was "ultra vires and void." *See Arkules*, 151 Ariz. at 440.

## CONCLUSION

¶28 The Board proceeded without legal authority and, therefore, we reverse the judgment of the superior court and remand with instructions to enter judgment declaring the variance invalid. We award

11

Pawn its costs pursuant to A.R.S. § 12-342 and attorney fees pursuant to A.R.S. §§ 12-348.A.2 and -348.I.1 upon compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama