IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

PAWN 1ST, LLC, AN ARIZONA LIMITED LIABILITY COMPANY,
*Plaintiff/Appellant,*

*v.*

CITY OF PHOENIX, A POLITICAL SUBDIVISION OF THE STATE OF ARIZONA;
BOARD OF ADJUSTMENT OF THE CITY OF PHOENIX; AND BOB FORD; EMILIO
GAYNOR; PATRICK PAUL; ALEX TAUBER; YVONNE HUNTER; BETTINA NAVA;
AND EMILY RYAN, AS MEMBERS OF AND CONSTITUTING THE BOARD OF
ADJUSTMENT OF THE CITY OF PHOENIX,
*Defendants/Appellees,*

WILLIAM JACHIMEK DBA CENTRAL PAWN,
*Real Party in Interest/Appellee.*

No. CV-16-0107-PR
Filed August 10, 2017

Appeal from the Superior Court in Maricopa County
The Honorable Lisa Daniel Flores, Judge
No. LC2010-000701
**AFFIRMED**

Opinion of the Court of Appeals, Division One
239 Ariz. 539 (App. 2016)
**VACATED**

COUNSEL:

Thomas M. Baker, Baker & Baker, Phoenix, Attorney for Pawn 1st, LLC

Brad Holm, Phoenix City Attorney, Les S. Tuskai (argued), Paul Li,
Assistant City Attorneys, Phoenix, Attorneys for City of Phoenix, Board of
Adjustment of the City of Phoenix, Bob Ford, Emilio Gaynor, Patrick Paul,
Alex Tauber, Yvonne Hunter, Bettina Nava and Emily Ryan

Claudio E. Iannitelli, John C. Marcolini (argued), Cheifetz Iannitelli Marcolini, P.C., Phoenix, Attorneys for William Jachimek dba Central Pawn

Nicholas J. Wood, Adam E. Lang, Brianna L. Long, Snell & Wilmer, L.L.P., Phoenix, Attorneys for Amicus Curiae American Planning Association, Arizona Chapter

————————————

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL, TIMMER, BOLICK, and GOULD joined.

JUSTICE LOPEZ, opinion of the Court:

¶1         This case concerns the standards a municipal zoning board applies in considering an application for a zoning variance. We hold that to obtain an area variance, an applicant must show that strictly applying a zoning ordinance will cause "peculiar and exceptional practical difficulties" that deprive a property of privileges enjoyed by other similarly zoned properties. We also clarify that the applicant's desire to use the property for purposes allowed on other similarly zoned properties does not in itself constitute a self-imposed special circumstance justifying denial of an area variance.

## BACKGROUND

¶ 2         The dispute here concerns the City of Phoenix Board of Adjustment's (the "Board") grant of a variance on a parcel of land (the "Property") at the southwest corner of McDowell Road and 32nd Street in Phoenix. The area in which the Property sits is zoned as a "Commercial C-3 District—General Commercial." Such districts have 141 specific permitted uses plus all uses permitted in properties zoned C-1 and C-2, and several residential uses. C-3 districts are designed to provide areas for "intensive commercial uses." Phx., Ariz., Zoning Ordinance § 624(A) (hereinafter "Ordinance").

¶3            The Property boasts a conspicuous history.  For many decades, it was home to an "adult theatre" operated under various names. In 1973, the City of Phoenix completed an eminent domain action that altered the Property's dimensions and resulted in several unique characteristics, all of which limited its commercial viability.  First, the action reduced the Property to only 12,000 square feet, smaller than any of the twelve surrounding C-3-zoned corner parcels.  Second, it eliminated the frontage area around the building on the Property, resulting in its direct abutment of a public sidewalk.  Third, it restricted parking spaces.

¶4            In January 2010, the Property's owners evicted their tenants, discontinued the Property's use as an adult theatre (a non-conforming use), and leased the Property to William Jachimek, doing business as Central Pawn, with an option to purchase.  When Jachimek entered the lease, he intended to operate a pawn shop.  A pawn shop is a permitted use in a C-2-zoned parcel, provided the building's exterior walls are at least 500 feet from a residential district and the owner obtains a use permit from the zoning administrator. Jachimek applied for both a use permit for his pawn business and, because the Property is within 500 feet of a residential district, a variance from the 500-foot residential setback requirement.

¶5            After the zoning administration hearing officer denied his applications, Jachimek appealed to the Board.  At the Board hearing, Pawn 1st, LLC ("Pawn"), a competing pawn shop, opposed the variance.  The Board conditionally approved the variance, requiring Jachimek to operate the pawn shop only during specified hours, to not buy or sell guns or pornography, and to apply for building permits for a promised remodel of the building within one year.  The Board's minutes from its July 1, 2010 meeting memorialize its findings:

> [S]pecial circumstances . . . appl[y] to the land, namely the unique nature of the discontinuance of the non-conforming use on the property [the adult theatre use], the fact that it was substantially impacted by prior [eminent] domain activities in a manner that was dissimilar to other properties in a reasonably close radius, including setbacks, and the fact that there [is] less than 12,000 total square feet available and there

[are] restrictive parking requirements, that these special circumstances were not created by the owner or applicant, and were rather created in part by growth in the city itself, that it was necessary for the preservation and enjoyment of substantial property rights given the restrictions and the property and current dormancy of any other business on the site, this particular place on the site, that authorizing it would not be materially detrimental to persons residing or working in the vicinity, to adjacent property, the neighborhood or public welfare in general.

¶6      After the Board rejected a reconsideration motion, Pawn filed a special action in superior court challenging the Board's variance decision. The superior court ruled in Jachimek's favor, finding that Pawn lacked standing to challenge the Board's decision. The court of appeals reversed, finding that Pawn had standing. *Pawn 1st, LLC v. City of Phoenix*, 231 Ariz. 309 (App. 2013) (*Pawn I*). On remand, the superior court ruled in Jachimek's favor and dismissed Pawn's complaint, finding that the variance was an area variance and not a use variance; that the Board's decision to grant Jachimek's area variance was not ultra vires because the Board is authorized to consider area variances; and that sufficient evidence supported the Board's variance decision.

¶7      The court of appeals again reversed. *Pawn 1st, LLC v. City of Phoenix*, 239 Ariz. 539, 545 ¶ 28 (App. 2016) (*Pawn II*). It agreed with the superior court that Jachimek sought an area variance because a pawn shop is an allowed use within a C-3 zoning district, irrespective of the 500-foot distance requirement. *Id.* at 542 ¶ 11. But it disagreed that the Board acted within its authority and therefore remanded for entry of a judgment declaring the area variance invalid. *Id.* at 545 ¶ 28.

¶8      We granted review because the standards a municipal zoning boards of adjustment must apply when considering an application for a zoning variance present recurring issues of statewide importance. We have jurisdiction pursuant to article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

4

**DISCUSSION**

**¶9**        We review issues of statutory interpretation de novo, *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 387 ¶ 30 (2013), and we presume the validity of the Board's determination unless it is "against the weight of the evidence, unreasonable, erroneous, or illegal as a matter of law." *Mueller v. City of Phoenix ex rel. Phoenix Bd. of Adjustment II*, 102 Ariz. 575, 581 (1967); *see also* A.R.S. § 12-910(E) ("The court shall affirm the agency action unless . . . the court concludes that the action is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion.").

**I.        Zoning Boards of Adjustment**

**¶10**        Arizona law authorizes cities and towns to establish boards of adjustment by ordinance.  A.R.S. § 9-462.06(A).  The boards decide appeals from zoning administrators' decisions concerning zoning ordinance enforcement.  A.R.S. § 9-462.06(G)(1).  Primarily, the boards determine whether "special circumstances" exist to relieve owners of property with unique characteristics from strict application of zoning laws. *See* A.R.S. § 9-462.06(G)(2).

**¶11**        The boards' authority to modify zoning decisions is statutorily limited.  Boards of adjustment may not: (1) change the uses permitted in a zoning district; or (2) "[g]rant a variance if the special circumstances applicable to the property are self-imposed by the property owner."  A.R.S. § 9-462.06(H); *cf. Arkules v. Bd. of Adjustment of Paradise Valley*, 151 Ariz. 438, 440 (App. 1986) (holding that a board has "no powers except those granted by the statutes creating it," and "its power is restricted to that granted by the zoning ordinance in accordance with the statute"). Consequently, a board's grant of a variance in excess of its statutory authority is ultra vires and invalid as a matter of law. *Arkules*, 151 Ariz. at 440.

5

## II.     The Phoenix Zoning Ordinance

**¶12**     Consistent with § 9-462.06, the Phoenix Zoning Ordinance authorizes a zoning administrator to issue a variance when "a literal enforcement of any provisions of the [O]rdinance would result in unnecessary property hardship."  Ordinance § 307(A)(9).  A variance, however, is authorized only if the applicant can establish that (a) special circumstances apply to the land, building, or use referenced in the application which do not apply to other district properties; (b) the owner did not create the special circumstances; (c) the variance is necessary for the "preservation and enjoyment of substantial property rights"; and (d) the variance will not be materially detrimental to the area.  Ordinance § 307(9)(a)–(d).

**¶13**     If a zoning administrator denies a variance, an applicant may appeal to the Board, but the Board's authority to modify a zoning decision is limited in that it may not (a) change the uses permitted in a zoning classification or district; or (b) grant a variance if the property owner self-imposes the special circumstances applicable to the property.  Ordinance § 303(B)(2).

## III.     Area and Use Variances

**¶14**     Arizona law distinguishes area variances from use variances. *See Ivancovich v. City of Tucson Bd. of Adjustment*, 22 Ariz. App. 530, 536 (1974) (noting that "the distinction between 'area' and 'use' variances, and the imposition of separate requirements for the granting of each type, are inventions of the court").  An area variance relieves the duty to comply with a zoning ordinance's technical requirements, such as "setback line, frontage requirements, height limitations, lot size restrictions, density regulations and yard requirements," while a  use variance permits a use not expressly allowed by a zoning ordinance. *Id.*  The Arizona Legislature prohibits boards of adjustment from changing the "uses permitted," thus confining their authority only to area variances. *See Cardon Oil Co. v. City of Phoenix*, 122 Ariz. 102, 103 n.1 (1979) ("[Section] 9-462.06(H)(1) now specifically prohibits a board of adjustment from changing any of the uses permitted in a zoning classification.").

6

¶15            In *Ivancovich*, the court of appeals explained the different variance standards: an area variance requires a showing of "peculiar and exceptional practical difficulties," while a use variance requires a showing of "exceptional and undue hardship."  22 Ariz. App. at 538 (noting that "[t]he difference between exceptional and undue hardship and peculiar and exceptional practical difficulties is one of degree").  One reason for requiring a "less stringent" showing of encumbrance for an area variance than a use variance is because it does not affect the character of the community. *Id.* at 536.

¶16            A use variance, however, requires a more stringent showing that compliance with the zoning regulations precludes any reasonable use of the property. *Id.* at 538 (stating that "[i]t must be shown that the zoning ordinances preclude the use of the property in question for any purpose to which it is reasonably adapted").  A legislative body, rather than a zoning board, may authorize a use variance.  A.R.S. § 9-462.01(A)(1) ("[T]he legislative body of any municipality by ordinance may . . . [r]egulate the use of buildings, structures and land as between agriculture, residence, industry, business and other purposes."); A.R.S. § 9-462.06(H)(1) (A board of adjustment may not "[m]ake any changes in the uses permitted in any zoning classification or zoning district, or make any changes in the terms of the zoning ordinance . . . ."); *Ivancovich*, 22 Ariz. App. at 535 ("The Board cannot amend or repeal any zoning ordinance for this power belongs to the City Council.").  "An inability to put the property to a more profitable use or loss of economic advantage is not sufficient to constitute undue hardship" justifying a use variance. *Ivancovich*, 22 Ariz. App. at 538.  This "no reasonable use" standard is limited to use variances. *Id.* (holding that "[s]uch a showing need not be made in the case of area variances").

¶17            The reasons for this distinction are sound.  Two examples illustrate the point.  Permitting an adult bookstore (a C-3 use) in a residential district would require a use variance—with its attendant higher "exceptional and undue hardship" standard—and the city legislative body's approval through rezoning because it may fundamentally alter the neighborhood.  On the other hand, a decision regarding the number of parking spaces for a use permitted in a particular district, such as a restaurant, would require an area variance because it would not produce the type of neighborhood-altering impact that requires legislative approval.

¶18    The area variance provisions protect property owners where strict application of the Ordinance would "deprive the property of privileges enjoyed by other property of the same classification in the same zoning district," A.R.S. § 9-462.06(G)(2), and "result in unnecessary property hardship." Ordinance § 307(A)(9). They serve as a "safety valve against excessive regulation." James A. Kushner, 2 Subdivision Law and Growth Mgmt. § 8:13 (2d ed. 2017).

### IV.    Jachimek's Variance

¶19    Here, we consider first whether Jachimek applied for an area or use variance, and second whether the Board acted within its discretion in granting the variance. The court of appeals held that Jachimek's variance was an area variance because a pawn shop is a permitted use in a C-3 zoning district, irrespective of the 500-foot distance requirement. *Pawn II*, 239 Ariz. at 542 ¶ 12. We agree.

¶20    The distinction between area and use variances centers on the nature of the variance. A pawn shop is a permitted use in the zoning classification here: the Property is zoned as a C-3 commercial district; all C-2 commercial district uses are allowed in a C-3 district; and a pawn shop is a permitted use in a C-2 district, provided the exterior walls of the building are at least 500 feet from a residential district. Ordinance § 623(D)(132)(b). Contrary to Pawn's argument, the 500-foot requirement is akin to a setback or frontage requirement, not a use regulation; it is a technical requirement of an established commercial area. A variance allowing a pawn shop in an existing commercial district does not fundamentally alter the nature of the area. The Board granted Jachimek an area variance, not a use variance, and it did not exceed its authority under A.R.S. § 9-462.06(H)(1).

### V.    Special Circumstances

¶21    Boards of adjustment may grant area variances only if, due to special circumstances, "the strict application of the zoning ordinance will deprive the property of privileges enjoyed by other property of the same

classification in the same zoning district."   A.R.S. § 9-462.06(G)(2).   "The term 'special circumstances' as used in the zoning ordinance is the functional equivalent of the word 'hardship.'"   *Burns v. SPA Auto., Ltd.*, 156 Ariz. 503, 505 (App. 1988).

¶22      We agree with the Board, superior court, and court of appeals that special circumstances apply to the Property.  The Board reasoned, after comparing the Property to twelve surrounding C-3-zoned corner parcels, that prior eminent domain activities rendered the Property "dissimilar to other properties in a reasonably close radius."   The Board explained that the special circumstances arose from the Property's physical characteristics. The record supports the Board's findings that the lot size, the building's limited setback from the public sidewalk, and the parking restrictions constitute special circumstances justifying an area variance, because the Property's unique characteristics create exceptional practical difficulties. Accordingly, the Board acted within its discretion in finding sufficient special circumstances unique to the Property to justify Jachimek's variance.

### VI.      Prohibition against Self-Imposition

¶23      A finding of special circumstances does not justify a variance, however, if the circumstances are self-imposed by the property owner. A.R.S. § 9-462.06(H)(2); Ordinance §§ 303(B)(2)(b), 307(A)(9)(a)–(b), -(10)(b). A board of adjustment exceeds its statutory jurisdiction and authority, and its decision is "ultra vires and void," if it grants a variance in violation of the prohibition against self-imposition.  *See Arkules*, 151 Ariz. at 440.

¶24      In this case, although it acknowledged that special circumstances impacted the Property, the court of appeals held that any special circumstances "were created by Jachimek and/or the Property owner by selecting this particular property to use as a pawn shop, in violation of the prohibition against self-imposition," and, consequently, "the Board's decision to grant Jachimek a variance was 'ultra vires and void.'"  *Pawn II*, 239 Ariz. at 545 ¶ 27.  We disagree.

¶25        The court of appeals relied on three Arizona cases in concluding Jachimek created the Property's special circumstances: *Arkules*, *Burns*, and *Rivera v. City of Phoenix*, 186 Ariz. 600 (App. 1996). These cases are factually distinguishable.

¶26        In *Arkules*, neighbors challenged a variance allowing a homeowner to paint his house a color inconsistent with a zoning regulation requiring it to "blend [in] with the mountain background." 151 Ariz. at 439. The court of appeals ruled in the neighbors' favor because, under zoning law, "[t]he color of a house is not a factor pertaining to the real property or which would deprive the property of uses or privileges enjoyed by other property of the same zoning classification." *Id.* at 441. The owner's house color preference did not constitute a cognizable hardship because the statutory provisions and zoning ordinance "specifically state that any hardship must relate to the use of the land as opposed to the owner" and, therefore, "[a] personal hardship does not justify a variance." *Id.* at 442.

¶27        Similarly, in *Burns*, a car dealership owner created his own zoning hardship by contracting with three car manufacturers that required him to display the manufacturers' logos on a larger sign than the city's zoning rules allowed. 156 Ariz. at 504. The superior court reversed the board of adjustment's decision allowing a variance to display a non-compliant sign. *Id.* The court of appeals upheld the superior court, reasoning that the special circumstances "were self-inflicted by [the owner's] decision to be a three-car dealership," and that special circumstances may be considered only if they arise out of "circumstances or conditions beyond the control of the party involved." *Id.* at 505. Unlike Jachimek's decision to operate a pawn shop, a use denied to him but permitted to other similarly situated property owners in the same zoning district, the owner in *Burns* sought relief from signage restrictions applied uniformly to comparable properties.

¶28        In *Rivera*, a homeowner obtained a building permit to expand his residence. 186 Ariz. at 602. Following inspection of the completed work, the city discovered that the improvements exceeded a zoning limitation on the square footage of residential improvements. *Id.* The Board ordered the homeowner to demolish the non-compliant portion of

his residence and he sought a variance. *Id.* The court of appeals affirmed the Board's denial of the variance, reasoning that the homeowner created the special circumstances because he provided the city with an erroneous site plan. *Id.* at 603.

¶29 *Arkules*, *Burns*, and *Rivera* are distinguishable because in each case the owner created the special circumstances; they did not arise from applying the zoning ordinance to circumstances or conditions beyond the owners' control. In contrast, here the special circumstances arose from factors beyond Jachimek's control. The City's eminent domain action, not Jachimek's intended use, altered the Property's dimensions and created the special circumstances, including the Property's comparatively small lot size, absence of frontage area around the building, direct abutment of a public sidewalk, and onerous parking restrictions. These characteristics and the strict application of the zoning regulations uniquely diminish the Property's commercial viability as compared to "other property of the same classification in the same zoning district," A.R.S. § 9-462.06(G)(2), and have nothing to do with Jachimek's personal preference.

¶30 We are also unpersuaded by the court of appeals' reliance on *Minney v. City of Azusa*, 330 P.2d 255 (Cal. Dist. Ct. App. 1958), for the proposition that "[o]ne who purchases property in anticipation of procuring a variance to enable him to use it for a purpose forbidden at the time of sale cannot complain of hardship ensuing from a denial of the desired variance." *Pawn II*, 239 Ariz. at 545 ¶ 26. In *Minney*, the California Court of Appeals upheld the denial of a variance where an owner purchased a lot in a residential zone and sought to construct a church. 330 P.2d at 257. Because *Minney* involved a use variance, it is inapposite. *See* Arden H. Rathkopf et al., 3 Rathkopf's The Law of Zoning and Planning § 58.22 (4th ed. 2017) (noting that classification of prior knowledge of special circumstances as a self-imposed hardship arose in the context of use variances). Unlike *Minney*'s use variance, Jachimek's proposed use was permissible and the area variance would not alter the character of the neighborhood.

¶31 Arizona zoning statutes and local ordinances require boards of adjustment to consider special circumstances applicable to the *property*,

not the property *owner*. *See, e.g.*, *Burns*, 156 Ariz. at 504 (explaining that a variance "is a legal status granted to a certain parcel of realty without regard to ownership," and "[p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance" (citation omitted)); Julian Conrad Juergensmeyer et al., Land Use Planning and Development Regulation Law § 5.17 (3d ed. 2017) ("Most courts consider the transfer of title irrelevant . . . [because] the zoning, not the person, creates the hardship."). Thus, in the context of area variances, we consider whether strictly applying the zoning requirements would deprive an owner of the same privileges owners of other similarly zoned property enjoy. Special circumstances are not "self-imposed" when the owner wants to use the property in a way permitted to other similarly situated properties, but cannot do so because of externally imposed circumstances like those involved here. Although it is fair to say that Jachimek voluntarily acquired the Property subject to the special circumstances, he certainly did not create them.

**¶32**     The court of appeals' rule would impose an undue restraint on alienation, as anyone purchasing a property with knowledge of the restriction would have no ability to obtain an area variance. This approach would give purchasers fewer property rights than sellers and, thus, would contravene our case law and longstanding legal tradition in favor of alienation. *See, e.g.*, *Tovrea v. Umphress*, 27 Ariz. App. 513, 517 (1976) (noting that "[r]estraints on alienation are generally disfavored"); *see also Lamb v. Zoning Bd. of Appeals of Taunton*, 923 N.E.2d 1078, 1081 (Mass. App. Ct. 2010) (citing Arden H. Rathkopf et al., 3 Rathkopf's The Law of Zoning and Planning § 58.22 at 141–148 (1991), stating "because a purchaser of property acquires no greater right to a variance than his predecessor, he should not be held to acquire less" and finding that "[t]o hold otherwise would discourage the free alienability of real property and the efficient use of land" (citations omitted)). Accordingly, we reject the court of appeals' rule and hold that an applicant or owner's selection of a property, even with knowledge that an area variance is required for an intended use allowed on other similarly zoned properties, does not itself constitute a self-imposed special circumstance precluding an area variance.

**CONCLUSION**

¶**33**　　　The Board acted within its discretion in finding that special circumstances applied to the Property; that the variance required was an area variance; that Jachimek did not create the special circumstances; that the variance was necessary for the preservation and enjoyment of substantial property rights; and that the variance would not be materially detrimental to the surrounding area.  Accordingly, we vacate the court of appeals' opinion and affirm the superior court's judgment upholding the Board's variance and granting summary judgment in Jachimek's favor.  We deny Pawn's request for attorney fees because it is not the prevailing party.