NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SON SILVER WEST GALLERY, INC., an Arizona corporation; WILLIAM B. ROBSON and LINDA ROSE ROBSON, husband and wife; RIO CODY ROBSON, a single man, *Plaintiffs/Appellants*,

*v.*

CITY OF SEDONA, an Arizona municipal corporation; AUDREE JUHLIN, in her official capacity as Zoning Administrator of the City of Sedona; JOEL GILGOFF, GARY RICH, ROBERT M. GORDON, CHARLOTTE HOSSEINI, and MIKE WARD, in their official capacities as Members of the City of Sedona Board of Adjustment, *Defendants/Appellees*.

No. 1 CA-CV 17-0761
FILED 10-30-2018

Appeal from the Superior Court in Coconino County
No. S0300CV201600306
The Honorable Dan R. Slayton, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Francis J. Slavin, P.C., Phoenix
By Francis J. Slavin, Daniel J. Slavin
*Co-Counsel for Plaintiffs/Appellants*

Osborn Maledon, P.A., Phoenix
By Eric M. Fraser, Hayleigh S. Crawford
*Co-Counsel for Plaintiffs/Appellants*

Sims Murray, Ltd., Phoenix
By Kristin M. Mackin
*Co-Counsel for Defendants/Appellees*

Sedona City Attorney's Office, Sedona
By Robert Lee Pickels, Jr.
*Co-Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Kent E. Cattani joined.

---

**W I N T H R O P**, Judge:

**¶1**        This case arises from an appeal before the Sedona Board of Adjustment ("BOA") that was challenged on special action to the Coconino County Superior Court.  Two issues are before us on appeal:

1) Whether Sedona's Community Development Director acted beyond the scope of her authority, as enunciated in Arizona Revised Statute ("A.R.S.") § 9-462.05(B), when she pursued enforcement of zoning provisions against Appellants, allegedly without actual knowledge of the conditions on the property; and

2) Whether the BOA exceeded its statutory authority under A.R.S. § 9-462.06(G) when it declined to make conclusive determinations on two corrective actions, and instead directed the parties to try and informally resolve these issues.

**¶2**        We hold that (1) the Director did not exceed her statutory authority in pursuing enforcement; and (2) the BOA did not exceed its statutory authority in the manner it chose to resolve the two disputed violations.  Accordingly, we vacate paragraphs 7 and 10 of the superior court's final judgment and reinstate the BOA's decision regarding corrective actions D.2 and D.5.  We affirm the remainder of the superior court's order.

2

**FACTS AND PROCEDURAL HISTORY**

¶3 In 1960, a homeowner in the Broken Arrow subdivision of Sedona opened and operated a small art gallery in her home. In 1964, Coconino County zoned the subdivision as residential—but because the art gallery predated the rezoning, the county allowed it to continue operating as a legal nonconforming use. The Robson family ("Robsons") purchased the property in 1981 and renamed it Son Silver West ("SSW"). They purchased the adjacent lot in 1987, which they used as outdoor retail space. According to zoning maps in the record, the original property is referred to as Lot 42, and the adjacent lot purchased in 1987 is Lot 41. After the City of Sedona incorporated in 1988, the Robsons were able to continue legally operating the gallery as a nonconforming use.

¶4 In 1989, SSW received from Sedona their first Notice of Violation ("NOV")—it would be the first of many. After inspecting the Robsons' properties, Sedona's Director of Community Development (the "Director") notified the Robsons that their use of Lot 41 was in violation of Sedona's Land Development Code. In response, the Robsons applied for and received a conditional use permit ("CUP") in 1992, retroactively authorizing the gallery's expansion from Lot 42 to Lot 41. Over the next few years, the Robsons obtained from Sedona minor adjustments to the 1992 CUP, along with various permits that allowed them to further develop Lots 42 and 41. In 1994, Sedona adopted a new Land Development Code, which—in practical terms relevant to this case—precluded SSW from expanding the CUP beyond what existed and was approved in 1992, and limited the CUP's application to Lots 42 and 41.

¶5 Between 1990 and 2014, the Robsons purchased three additional properties surrounding SSW—two houses and one vacant lot (collectively, the "non-CUP Properties"). SSW concedes the CUP does not extend to these properties. During those same years, Sedona discovered and acted on multiple violations on SSW's properties. Some of these violations were brought back into compliance, and others were resolved by SSW obtaining "after-the-fact" permits. Notably, each resolution was reached through cooperation between SSW and Sedona, and no pre-2014 violations ever progressed beyond the issuance of an NOV.

¶6 In 2014, the Director received complaints regarding the non-CUP Properties. The Director met with the Robsons and inspected these properties in September; the following month, she issued NOVs regarding only the non-CUP Properties. The Robsons requested and were granted stays on the NOVs so they could apply for comprehensive zoning changes

that would allow for commercial use of the non-CUP Properties. In May of 2015, they submitted a "Community Plan Amendment" and a rezoning application for the SSW properties, then later submitted a revised application. After informal consultation with Sedona representatives, the Robsons ultimately decided to withdraw the application.

¶7            Following withdrawal of the application, the Director took two actions: she renewed the 2014 NOVs on the non-CUP Properties, and, based upon information provided by the Robsons during the rezoning application process, issued two new NOVs alleging CUP violations on Lots 42 and 41. The 2015 NOVs stated that "[a]s a result of [the Robsons' proposed but now-withdrawn Community Plan Amendment and rezoning] application, additional violations were identified based on the information provided as part of the application review and consideration process." The Director noted that the Robsons had denied Sedona's requests to inspect existing conditions of all the SSW properties, and that city staff had not directly verified actual conditions on Lots 42 and 41.

¶8            SSW appealed the Director's corrective actions to Sedona's BOA. In their appeal memo to the BOA, SSW presented twenty-three issues, arguing that their right to continue operating in violation of the Land Development Code and the CUP had been approved by the prior Director in 2011, that such rights were "vested," and that the new Director was "equitably estopped" from pursuing such violations. SSW and Sedona appeared before the BOA on June 3, 2016. After a roughly five-hour hearing, the BOA issued its decision, largely upholding the Director's actions. However, the BOA directed the parties to attempt in good faith to resolve two of the actions—D.2 and D.5—informally.

¶9            SSW appealed via special action to the superior court, alleging that the BOA failed to address their arguments regarding vested rights and equitable estoppel, and the BOA exceeded its authority by directing the parties to work out actions D.2 and D.5 between themselves. After an extensive hearing, the superior court largely upheld the BOA's decision. The court found, however, that (1) the BOA decided action D.2 in favor of Sedona and affirmed; and (2) the BOA failed to decide action D.5. Accordingly, action D.5 was not ripe for special action review, but instead was subject to further review by the BOA "if necessary."

¶10           SSW's motion for a new trial and/or to alter or amend the superior court's final judgment was denied. SSW timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1) and (A)(5)(a).

## ANALYSIS

 I. *Whether the Director Acted Outside the Scope of Her Authority Under A.R.S. § 9-462.05(B)*

**¶11** On appeal, SSW abandoned its legal theories of vested rights and equitable estoppel. Instead, it argues that Sedona acted outside the scope of its statutory authority by pursuing enforcement against the Robsons for conditions on Lots 42 and 41 without city staff first physically verifying the current conditions on the property. SSW contends that such inspection as a pre-condition to enforcement is implied in the statutory language. SSW did not raise this argument before the BOA.[1]

**¶12** "Failure to raise an issue at an administrative hearing that the administrative tribunal is competent to hear waives that issue." *Neal v. Kingman*, 169 Ariz. 133, 136 (1991) (finding that a vested rights issue was waived where it was not raised before the board of adjustment) (citing *Rouse v. Scottsdale Unified Sch. Dist.*, 156 Ariz. 369, 371 (App. 1987) ("the implication of waiver is appropriate" where an appellant attempts to raise a substantive issue for the first time after appearing before an administrative tribunal that was competent to hear it)). Here, SSW appealed the corrective actions of the Director to the BOA; we have no doubt that the BOA has the jurisdiction and authority to hear and determine whether Sedona complied with A.R.S. § 9-462.05(B). Therefore, failure to raise the issue before the BOA would constitute waiver.

**¶13** SSW argues in the alternative that this court has the discretion to consider a new legal argument as long as it is based on facts contained in the administrative record. Assuming so without deciding that to be the case, we conclude A.R.S. § 9-462.05(B) merely addresses the sufficiency of the evidence required to sustain the Director's action. In that regard, we note that the BOA has authority under A.R.S. § 9-462.06(A), (B), (C), (F), and (G) to conduct a public hearing, take evidence, and reach its own decision upon *de novo* review of the issues. *See, e.g.*, *Lane v. City of Phoenix*, 169 Ariz. 37, 41 (App. 1989) ("The court of appeals considered the provisions of § 9-462.06 relating to the powers and duties of a board of adjustment, and . . .

---

[1] Both the applicability of A.R.S. § 9-462.05(B) and the argument that the Director acted outside the statute's scope were available to SSW from the moment the Director served the 2015 NOVs. Although SSW filed a 66-page appeal brief with the BOA, it did not contain any legal theory or argument regarding Sedona's alleged lack of compliance with the statute, or its authority to proceed with the subject enforcement action.

inferred a statutory intent to give the board *de novo* review."); *Murphy v. Town of Chino Valley*, 163 Ariz. 571, 575 (App. 1989) (stating the trial court erred "concluding that the board was without authority to conduct an evidentiary hearing . . . [because] the board has authority . . . to conduct a public hearing and take evidence."); *Arkules v. Bd. of Adjustment*, 151 Ariz. 438, 440 (App. 1986) ("The Board of Adjustment, though structured much like an administrative agency, acts in a quasi-judicial capacity.").

¶14        We review decisions of a board to determine whether it "acted arbitrarily, capriciously or abused its discretion," *see Austin Shea (Ariz.) 7th St. & Van Buren, L.L.C. v. City of Phoenix*, 213 Ariz. 385, 390, ¶ 19 (App. 2006), and will not overturn if there is any evidence to support the board's decision, *Blake v. City of Phoenix*, 157 Ariz. 93, 96 (App. 1988).

¶15        We have closely reviewed the evidence and arguments presented to the BOA, including the testimony and statements of the parties and by members of the public. Here, the BOA had a lengthy city staff report that detailed the extensive history of these properties, including ownership, expansion, past violations, and negotiated resolutions. It also heard evidence from the Director detailing the most recent negotiations between Sedona and the Robsons and their legal representatives relative to the now-withdrawn Community Plan Amendment and rezoning application, which reflected both existing and proposed expanded retail activities.[2] In addition to this evidence, the BOA also heard from adjoining landowners concerning the SSW retail activities on Lots 42 and 41. Although Mrs. Robson testified that the "footprint" on these lots had not changed since 2011,[3] the other evidence submitted more than adequately supported the BOA's ultimate conclusion that the current retail uses in and around the buildings on Lots 42 and 41 are in violation of the 1992 CUP. On this record, we see no

---

[2]        At oral argument, counsel for SSW argued that the "new" site map reflecting both existing and proposed retail uses, as submitted with the now-withdrawn redevelopment application, was not presented to or considered by the BOA. The transcript of the BOA hearing belies that assertion.

[3]        Sedona contended at oral argument—and the record reflects—that at no time has SSW presented any proof or argued that Lots 42 and 41 are actually in compliance with the 1992 CUP. We agree and note that, as is indicated by Mrs. Robson's testimony and SSW's now-abandoned arguments regarding vested rights and equitable estoppel, SSW has contended only that they are in compliance with what was allegedly informally approved by former Director O'Brien in 2011.

evidence that the Director exceeded her statutory authority, or that the BOA acted arbitrarily or capriciously, or abused its administrative discretion in sustaining the subject NOVs. In short, the evidence before the BOA was more than sufficient to support its findings in satisfaction of § 9-462.05(B).

> II.     *Whether the BOA Exceeded Its Statutory Authority by Directing SSW and Sedona to Resolve Corrective Actions D.2 and D.5 Between Themselves*

¶16          SSW next argues that the BOA exceeded its statutory authority in not conclusively deciding corrective actions D.2 and D.5. "When the state grants zoning power to a city, the power must be exercised within the limits and in the manner prescribed in the grant and not otherwise." *City of Scottsdale v. Scottsdale Associated Merchs., Inc.*, 120 Ariz. 4, 5 (1978). It is not disputed that municipal zoning authority is derived from the state. *Id.* (citation omitted). Where an administrative board acts outside the scope of that statutory authority, the decision is invalid as a matter of law. *Pawn 1st, LLC v. City of Phoenix*, 242 Ariz. 547, 551-52, ¶ 11 (2017).

¶17          We review matters of statutory interpretation *de novo*, and "presume the validity of the Board's determination unless it is against the weight of the evidence, unreasonable, erroneous, or illegal as a matter of law." *Id.* at 551, ¶ 9 (quotations and citation omitted).

¶18          The BOA derives its authority from A.R.S. § 9-462.06(G), which provides in relevant part that the BOA shall:

1.  Hear and decide appeals in which it is alleged there is an error in an order, requirement or decision made by the zoning administrator in the enforcement of a zoning ordinance adopted pursuant to this article.

                                   . . .

3.  Reverse or affirm, in whole or in part, *or modify* the order, requirement or decision of the zoning administrator appealed from, *and make the order, requirement, decision or determination as necessary*.

Section 9-462.06(G) (emphasis added). SSW argues that the statutory language requires the BOA to decide appeals in one of three ways: by reversing, affirming, or modifying the Director's order. We agree.

¶19          We disagree with SSW, however, that the BOA failed to satisfy this requirement when they issued orders regarding actions D.2 and

D.5. These actions from the Director order SSW to: (D.2) "[r]emove all enclosed building retail areas in excess of the approved 2,250 square feet" and return certain buildings to storage sheds; and (D.5) "update outdoor lighting fixtures." In paragraphs 6 and 7 of their decision on appeal, the BOA ordered and required:

6. That the square footage of 2,250 described in Corrective Action D.2 relative to violations identified in the November 10, 2015 Notices of Violation be adjusted by mutual agreement between the parties; [and]

7. That the parties will work in good faith to resolve the lighting issue described in Corrective Action D.5 relative to violations identified in the November 10, 2015 Notices of Violation . . . .

¶20 We disagree with SSW that these orders represent directives the BOA is not statutorily authorized to make. Section 9-462.06(G)(3) clearly allows the BOA to "modify the order, requirement or decision of the zoning administrator appealed from, and make the order, requirement, decision or determination as necessary."

¶21 Our research revealed only one case in Arizona directly discussing such a board's authority to modify zoning decisions. In *Pawn*, our Supreme Court noted that a "board['s] authority to modify zoning decisions is statutorily limited" by A.R.S. § 9-462.06(H), which states that boards of adjustment "may not: (1) change the uses permitted in a zoning district; or (2) [g]rant a variance if the special circumstances applicable to the property are self-imposed by the property owner." 242 Ariz. at 551, ¶ 11 (quotations and citation omitted).

¶22 Here, the BOA's orders regarding actions D.2 and D.5 implicate neither of the statutory prohibitions noted in *Pawn*. The BOA's order that the parties work together to resolve these issues—presumably resulting in SSW achieving compliance, whether by making changes to the property or obtaining additional permits—seems to us a clear exercise of its statutory power to modify the Director's orders and to direct an appropriate determination of the contested issues.

¶23 Furthermore, in reviewing the transcript of the hearing before the BOA, we note that SSW did not object during the publicly conducted deliberative process leading to the BOA's decisions on actions D.2 and D.5. During these deliberations, Sedona's attorney indicated that, as to D.2, there were certain discrepancies regarding square footage, and intimated

Sedona's willingness to "work it out" with SSW. SSW was free to object (as demonstrated by later interjections during the BOA's deliberations), but instead acquiesced to this exchange among the BOA members and Sedona, and the decision to which it led.

**¶24** Perhaps even more telling is the discussion regarding action D.5, on the issue of bringing SSW's lighting up to code. A member of the BOA asked whether "the Robsons [are] interested in working with [Sedona] to take advantage of [a grant program][4] to bring the lighting up to code?" Mr. Robson responded, "No, not really opposed to it." The BOA then stated they would "leave [D.5] in with the assumption that you guys are going to work it out." Again, SSW acquiesced.

**¶25** While we do not go so far as to find that SSW waived their argument against actions D.2 and D.5 by failing to object before the BOA, we decline their invitation to vacate the BOA's order that the parties work together to resolve two discrete issues, particularly where Sedona agreed to it and SSW at the very least acquiesced. The BOA's clear authority to modify the Director's orders notwithstanding, we do not believe it is the role of this court to order the BOA to make an "up-or-down" finding when the parties before it indicate a willingness to cooperate and resolve issues outside of a formal administrative setting. Furthermore, such an order by the BOA is consistent with the course of dealings between SSW and Sedona over decades of interaction.

### III. *Attorneys' Fees and Costs*

**¶26** SSW requests their attorneys' fees and costs under A.R.S. §§ 12-341, -348(A), and -1840. Sedona similarly requests its attorneys' fees and costs under A.R.S. §§ 12-341, -341.01, and -349.

**¶27** Because they are not the prevailing party, we deny SSW's request. In our discretion, we award reasonable attorneys' fees and costs to Sedona pursuant to A.R.S. § 12-341, in an amount to be determined upon compliance with Arizona Rule of Civil Appellate Procedure 21.

---

[4] Sedona's attorney informed the BOA that the grant program was no longer in existence. However, shortly thereafter, the BOA stated the belief that "in good faith" Sedona should be able to offer funds from the City Manager's discretionary account to act as a *de facto* grant. After this, and even upon the revelation of the grant program's discontinuation, SSW acquiesced to the decision of the BOA.

**CONCLUSION**

¶28        The Director did not exceed her statutory authority in pursuing enforcement of violations of the Sedona Land Use Code and the 1992 CUP.  We vacate paragraphs 7 and 10 of the superior court's order of final judgment and reinstate the BOA's orders regarding corrective actions D.2 and D.5.  We affirm the remainder of the superior court's final judgment.



AMY M. WOOD • Clerk of the Court
FILED:  AA